Hempiulu, C. J.
' In this cause the record is extremely imperfect. Several papers are missing and in answer to a writ of certiorari the clerk of the district court more than twelve months since certified to *(45) that fact and that it was impossible to send up a complete transcript of the record; and further, that the said papers, as appears by the clerk’s memorandum, were taken out by the attorney or attorneys of the plaintiff in error.'
There being no probability of the records being made more full, we proceed to determine the cause on such portion of the papers and proceedings as are presented for our consideration.
"We find, in the first place, that the petition and other papers are lost, and then follow some extracts from the minutes of the court by which it appears that on the 23d of May, 1842, the cause was referred to arbitrators; that an award was promptly returned and that the same was made and declared to be the judgment of the court. Nearly two years afterwards a writ of error was sued out and fiye different errors were assigned as the grounds for the reversal of the judgment.
"We can only consider such of these as are founded upon the order of reference, the award and the judgment thereupon, as these are the only proceedings in the case which have been placed before us for review.
Passing over then the first and fourth assignments as entirely irrelevant in the present condition of the record and examining such portions of the second and third as come within our cognizance, we find it alleged as error that there does not appear on the minutes of the court, either in the order referring the cause to arbitrators or otherwise, except at the time of entering the judgment, any agreement of the parties that the award of the arbitrators should be rendered as the judgment of the court; nor any agreement or consent after the award was made that it should be entered up; and that the parties bound themselves in a penal bond to enforce the stipulations of the agreement to refer the cause, as the sole sanction by which the award was to be enforced.
That portion of the assignment which refers to the stipulations of the penalty bond is not under our supervision, as there is no bond in j the record, and consequently we have no knowledge of its existence or contents, except as they appear in the body of the award itself.
It is true that the consent of the parties either before or after the award is necessary to its being made the judgment of the court; but where there is no proof to the contrary, we are bound in favor of the regularity and correctness of the judgment to presume that this consent was given.
There is nothing in the order of reference or in the award or judgment to sanction the contrary presumption. The order, award and *(46) judgment follow in consecutive order and appear to be almost simultaneous acts. The cause was still on the docket and in contemplation of law, the plaintiff, by himself or attorneys, was present in court and attending to its prosecution. No objection was made by him to the rendition of the judgment, at which time his opposition should have been manifested, and the action of the court made a distinct ground of exception. His silence then must be construed into consent, and it is too late now to urge that this should not be presumed unless expressed in so many terms in some part of the record.
It is assigned for error in the fifth place that the award itself shows illegality and extortion on its face; in this, that the greater portion of the sum awarded in favor of the defendant (if not the whole amount) was for usurious interest at a rate not authorized by law and amounting to extortion. *
This objection should also have been urged below and a motion should have been made to set aside the award on the grounds alleged. But the award itself shows’ the reverse of the facts set forth in the above assignment of error. The arbitrators proceeded to determine the cause upon what they conceive to be the principles of honor and justice between man and man, as they were directed to do in the bond of the parties, and found that Edrington had obtained from League five hundred dollars, and placed in his possession the negro Dick, to be redeemed in three months at the rate of ten per cent, per month; that the negro had since remained in the possession of League.
They decided that the services of the negro should compensate for the use of the money and that the negro should be delivered up upon Edrington’s paying the original amount borrowed, viz.: the sum of five hundred dollars.
We cannot perceive in this finding of the arbitrators any ground for the charge that the greater part of the sum awarded in favor of the defendant, if not the whole amount, was for usurious interest.
Five hundred dollars were borrowed originally at the rate of ten per cent, per month. This contract was annulled and the principal sum only directed to be paid; while the legal interest accruing thereon was extinguished by the services of the slave who had been pledged for the ultimate redemption of the loan. So far from the amount awarded being made up from the usurious .interest, we find that such a rate of interest was expressly disallowed. It might perhaps be contended that the services of the slave exceeded in value the highest legal rate of interest for the sum of five hundred dollars and that therefore the award was tainted with usury. In this case we have no evidence of the value of the services of the slave or how long he was *(47) in possession of the defendant, nor do we deem it necessary to enter into any of the doctrines in relation to either the mortgages or the pledges of personel property or how far contracts where the services of a slave are pledged for the use of money would be sanctioned. These questions have not been argued; they are not necessary to the decision of the cause and will be passed over.
Let it be granted that the services exceeded somewhat in value the interest of the money, yet that would be insufficient to annul the award.
The cause had been removed from the forum established by law for the settlement of controverted rights. It was brought before judges selected by the parties, who were directed to determine their disputes on principles of honor and justice between man and man; Under the terms of this submission the arbitrators had the power to disregard any strict legal right or objection, and adjust the matters in dispute on the enlarged principles of justice and good conscience. Mr. Chitty, in his general practice, vol. 2, p. 76, says, “That when the plaintiff or defendant resolve to stand upon some strict legal right or objection that may not accord with the equity or justice of the case, then it would be injudicious to refer, at least without expressly stipulating that if any legal objection either to the evidence or to the result should be taken, then absolutely the party shall have the benefit of it, and negatively, that it shall not be in the discretion of the arbitrator to deny effect to it; for unless expressly controlled in this respect, some arbitrators will exclude a legal ground of defense such as usury, and make their award according to what they consider is the justice of the case, and such award would, unless otherwise expressly provided, be sustained.” See the authority referred to by Chitty.
In another author of high authority we find the following, viz.;
“Where arbitrators knowing what the law is, or leaving it entirely out of their consideration, make what they conceive under the circumstances of the case to be an equitable decision, it is no objection to the award that in some particular point it is manifestly against law.” Kyd on Awards, 351. From the above authorities it would seem that arbitrators may disregard the defense of usury and decide according to the justice of the case, and their award will be sustained. The object of the reference .here was (without regarding legal oi technical objections) to attain a decision according to the principles of honor and justice.
The award has been rendered in conformity with the terms, and we perceive no such illegality upon its face as would authorize us to set it' aside.
*(48) If the plaintiff in error has not had full justice done him in consequence of the imperfection of the record, it is attributable alone to himself. The defendant is not only blameless, but has had the misfortune to be delayed for a long period in the recovery of his money, by an event which he could not possibly control or prevent, and which is justly chargeable to the negligence or inattention of the plaintiff.
It is ordered, adjudged and decreed that the judgment of the court below be affirmed.