## CITY OF SAN ANTONIO et al. v. ROBERT THOMPSON & CO., Inc.*

### No. 8482.

Court of Civil Appeals of Texas. San Antonio.

June 18, 1930.

Rehearing Denied July 16, 1930.

T. D. Cobbs, Jr., C. K. Quin, and Arnold & Cozby, all of San Antonio, for appellants.

Douglas & Black, of San Antonio, for appellee.

FLY, C. J.

This suit is one seeking a permanent injunction restraining the city of San Antonio, C. M. Chambers, its mayor, and Frank Bushick, Jake Rubiola, Paul Steffler, and Phil Wright, its commissioners, C. T. Fincham, its building inspector, and Edward Wolfe, its fire-marshal, from revoking a certain building permit issued on January 8, 1930; said permit being given for the erection of a building on lot 1 in block 8, at the corner of San Pedro avenue and Summit avenue in San Antonio. The court decreed that "said defendants, and each of them, together with their servants, agents and employees, are hereby restrained from interfering with plaintiff in the construction of its said building, at the north-east corner of Summit and San Pedro avenues in the City of San Antonio, Texas, in accordance with the permit which was duly issued on January 7, 1930, under the provisions of the building ordinance of the City of San Antonio, Texas." The appellants were also specifically enjoined and restrained mandatorily from revoking the building permit issued to plaintiff on January 7, 1930, authorizing it to erect its building on the property described.

The petition is full and elaborate, setting forth facts and circumstances claimed to be connected with the issuance and revocation of the permit to build. It shows the existence of a valid ordinance passed by the city of San Antonio and a strict compliance therewith to the time of granting the permit, but attacks the power of the city to revoke a permit when once granted. The revocation of the permit is alleged to have been made arbitrarily by the mayor on the next day after it had been issued. It was alleged that the building code of San Antonio provides for a board of appeals, to which any one feeling aggrieved at a decision of the building inspector could appeal. The ordinance provided

---

*Writ of error granted.

for the selection of an arbiter by the aggrieved party, another by the inspector, and a third to be chosen by the two arbiters first chosen. Appellee appealed to that board, and followed the provisions of the ordinance in constituting the board. The cause was regularly submitted to the board. According to the ordinance, as alleged by appellee and as proved, "The Building Inspector shall pass on all questions arising under this ordinance; in case of dissatisfaction with his decision, except in respect to unsecured and unsafe buildings requiring immediate action, the question in dispute may be referred to Board of Appeals and a decision of the majority of the board shall determine the issue." Appellee herein took that appeal to the board and presented the following issues to be decided by the board:

"First: (a) Whether said building permit was in fact regularly granted and issued on January 7th, 1930,

"(b) and thereafter, on January 8th, 1930, declared revoked.

"Second: Whether any cause existed to justify the revocation of said building permit; if so, what that cause was.

"Third: Should said building permit so granted on January 7th, 1930, be continued in full operation and effect."

"To question 1–a: We answer Yes.

"To question 1–b: We answer Yes.

"To question 2: We answer Yes; the signed petition submitted us by property owners in said addition.

"To question 3: We answer No."

No appeal was taken from the decision of the board of appeals, and no complaint has been made of such decision. The ordinance did not require appellee to submit to a hearing before the board, but appellee voluntarily went before the board and submitted itself to the jurisdiction of the board. After the revocation of the building permit, appellee did not seek through another application for a permit to obtain the authority to erect its desired buildings.

Appellee unreservedly submitted its claim and grievance to a board not alleged to have been unfair, or which acted fraudulently or with prejudice or bias. It was presumably a fair-minded, just board, partly formed by appellee, to whom appellee presented its own issues, and against whose decision no appeal was reserved. Appellee gambled with the decision of the board, submitted to its jurisdiction, and then without one word of complaint of its decision it simply ignores the decision and enters another tribunal to set aside and destroy the action of appellants. No right of appeal from the award of the board was reserved or attempted. In article 233, Revised Statutes, it is provided: "If a right of appeal is not expressly reserved in the original agreement to arbitrate, no such right shall exist, but the decision of the arbitrators shall be final." It is true that provision is found in title 10, devoted to statutory arbitrations, but in article 238 of the same title other arbitrations not under the statute are recognized. The ordinance furnished the basis for the agreement, the parties acted upon that agreement, each furnishing a member of the board and the two selecting the third, and an admittedly upright and just board decided unanimously against appellee. It was a legal and binding arbitration of the differences between the parties, and they should be bound by it. Ridgill Bros. v. Dupree (Tex. Civ. App.) 85 S. W. 1166. As said in Myers v. Easterwood, 60 Tex. 107: "The award of the arbitrator is substantially the agreement of the parties, for they each empowered the arbitrator to ascertain and declare the terms of the agreement, and by his award, when fairly made, they ought to be as much bound as though they had made an agreement directly between themselves, embracing the terms of the award." See, also, Faggard v. Williamson, 4 Tex. Civ. App. 337, 23 S. W. 557.

We copy with approval the following excerpt from an opinion of this court delivered through Associate Justice Edward W. Smith, in the case of Panhandle Grain & Elevator Co. v. Dorsey, 242 S. W. 255, 257:

"Having elected to pursue this course, the finding of the arbitrators is conclusive upon appellant, in the total absence from the proceedings and award of partiality, fraud, misconduct, or manifest error. Under the terms of the submission, the arbitrators had the power to disregard any strict legal right or objection, and adjust the matters in dispute on the enlarged principles of justice and good conscience; for 'where arbitrators, knowing what the law is, or leaving it entirely out of their consideration, make what they conceive under the circumstances of the case to be an equitable decision, it is no objection to the award that in some particular point it is manifestly against the law.' Edrington v. League, 1 Tex. 64; Green v. Franklin, 1 Tex. 497; Forshey v. Railway, 16 Tex. 516; Payne v. Metz, 14 Tex. 56. Upon this principle, it is immaterial if the record conclusively shows, and the arbitrators found, that Roberts Bros. breached their contract and appellant was warranted in terminating it, since the facts further showed, and the arbitrators found, that under all the circumstances equity and good conscience required appellant to accept Roberts Bros.' offer to make it whole. Upon the same principle, the arbitrators had the power to hold appellant responsible, even though Roberts Bros. did not tag the seed in the manner required by the statutes, which is doubtful. Edrington v. League, supra. 'The cause had been removed from the forum established by law for the settlement of controverted rights. It was brought before judges selected by the parties who were directed to determine their disputes on principles of

honor and justice between man and man,' and it does not now lie in the mouth of either party to repudiate the judgment thus invited, and which was manifestly fair and just. Edrington v. League, supra."

■ The mayor is the head of the city government with power of supervision over every department of the city government, and, if he deemed that an appointee of the city government had, without knowledge of facts, issued a permit for a person or corporation to invade a residential district, the residents of which were protesting such intrusion, in proximity to a school numerously attended by children, such building increasing a large influx of automobiles, augmenting the hazards to the lives and limbs of the children who would be enticed across the street by the allurements of the kind of trade that would be created, he not only had the authority, but it was his duty, to prevent such invasion of the rights of individuals and protect the lives of the children. There are other rights more sacred than those pertaining to merchandise and trade, such as the right to enjoy homes, where men and women have settled to rear their children in quiet and comfort, and where their children will be measurably safe under modern conditions of city life.

■ The act of an employee of the city government certainly cannot issue permits as unchangeable as a Persian tyrant's ukase, which cannot be set aside by the highest officer of the city in the interest of home owners and children. It is the duty of the city officers to protect the right to peace and comfort in homes, and not permit the increasing advance of commercialism to submerge every individual right. We are told that a corporation, doubtless in order to anticipate opposition to the advance of commercialism, immediately prepared to construct the building desired, and that, although the permit was only a day old, "vested rights" had sprung into full force and activity, forgetting the rights of numbers of home owners to comfort and peace for themselves and safety for their children attending a nearby public school. No such rights had vested in appellee as would prevent the mayor from exercising his power to revoke the permit improvidently granted, in response to the property owners in the vicinity. An emergency arose when the home owners sent out their cry for protection, and the mayor quickly answered the call for assistance. As to the right of the mayor to revoke a permit, it is said in McQuillan, Municipal Corporations, § 1008: "A license may be revoked if the license violates a lawful condition, on which the license was granted or where there is other good cause therefor, but a license or permit cannot be revoked arbitrarily. Before revocation, in the absence of statutory or charter requirement, there is no necessity for notice or an opportunity to be heard, since the revocation of a license is an administrative act." In this case, however, appellee had a hearing before a board of his own choosing, and that board justified the action of the mayor in his revocation of the permit.

■ The right of regulation of the erection of buildings in a city is held by municipal government, is granted in every charter, and recognized in all civilized communities. Scott v. Champion Bldg. Co. (Tex. Civ. App.) 28 S.W. (2d) 178. The question has been often considered by this court, and need not be discussed. The charter of San Antonio gives the authority to grant or refuse the erection of buildings, and is a matter confided to municipalities, and, when exercised with discretion and a due regard for public or private rights, their authority should not be destroyed or hampered by a government of injunctions erected and sustained by courts. The authorities should be allowed to govern the city without let or hindrance, except when they disregard rights or seek to oppress the citizen. We see in this case no ground for the issuance of an injunction to restrain the city government in the exercise of the powers conferred upon it by statute and charter.

The judgment is reversed, and judgment here rendered that the injunction be dissolved that appellee take nothing by its suit, and pay all costs in this behalf expended.