**Opinion issued March 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00315-CV

_____

## MYLES HOPKINS, APPELLANT

## V.

## W.A. STRICKLAND, APPELLEE

On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 64942

## MEMORANDUM OPINION

Myles Hopkins, a former police chief of Liverpool, Texas, sued Bill Strickland, the mayor of Liverpool, for slander and malicious prosecution. Strickland responded with a plea to the jurisdiction, maintaining that he was immune from suit against him individually under section 101.106(f) of the Texas Tort Claims Act, among other common law assertions of immunity. *See* TEX. CIV.

PRAC. & REM. CODE ANN. § 101.106(f) (West 2011). The trial court granted the plea to the jurisdiction. On appeal, Hopkins contends that section 101.106(f) is inapplicable, because he sued Strickland in his individual capacity for acts outside the scope of Strickland's official duties as mayor. We conclude that section 101.106(f) bars Hopkins's claims against Strickland and therefore affirm.

## Background

After Strickland was elected mayor of Liverpool, Hopkins resigned from his position as the Liverpool police chief. Hopkins then sought employment with the nearby city of Danbury. The mayor of Danbury, Bill Turnipseed, spoke to Strickland on the phone about Hopkins as a potential candidate for chief of police in Danbury. After their conversation, the two mayors agreed to meet to further discuss Hopkins. At their meeting, Strickland provided Liverpool's police budgets for two years while Hopkins was the chief of police to Turnipseed. He also answered Turnipseed's questions about Hopkins's performance. Hopkins alleges that during these conversations, Strickland defamed him by telling Turnipseed that Hopkins was dishonest, not a proficient employee, and not capable of performing the job of police chief.

Around the same time, the Liverpool city council authorized Strickland to collect funds that had been improperly paid to another former Liverpool employee. Strickland met with a representative of the Brazoria County District Attorney's

2

Office to discuss collecting the funds. Hopkins alleges that Strickland also discussed with the representative the possibility of pursuing criminal charges against Hopkins for misappropriating city funds. Eventually, the City of Danbury hired Hopkins as its chief of police. The district attorney's office never prosecuted Hopkins.

## Discussion

### *Standard of Review*

We review the trial court's ruling on a plea to the jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). The plaintiff must allege facts that affirmatively establish the trial court's subject matter jurisdiction. *Id.*; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 95 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if the plaintiff has alleged facts affirmatively demonstrating jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226–27; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 698 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. When the relevant evidence is undisputed or fails to raise a fact

3

question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. After a defendant asserts, and supports with evidence, that the court lacks subject matter jurisdiction, the plaintiff must show the existence of a disputed fact issue in order to avoid dismissal for want of jurisdiction. *Id.* at 227–28. The standard of review for such jurisdictional disputes "generally mirrors that of a [traditional] summary judgment." *Id.* at 228. On the other hand, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* In reviewing the evidence presented, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference in the plaintiff's favor. *Id.*

*Analysis*

Section 101.106(f) of the Tort Claims Act provides:

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Thus, a defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based

4

on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the government unit under the Tort Claims Act. *Id.*; *see also Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011); *Univ. of Tex. Health Sci. Ctr. v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011). The first component encompasses two inquiries: whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time. *See Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The statute strongly favors dismissal of governmental employees. *Id.*; *Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex. App.—Waco 2005, pet. denied).

*Scope of Employment*

It is undisputed that Liverpool, a governmental unit, employed Strickland as mayor at the relevant time. Accordingly, we turn to examine whether Strickland was acting within the scope of his general employment when he committed the alleged tortious acts—that is, when he made the defamatory statements to Turnipseed and consulted with the district attorney's office about prosecuting Hopkins.

The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and

5

includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5). "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). This is true even if the employee, in discharging her duties, acts in part to serve the employee's or a third party's interest. *Anderson*, 365 S.W.3d at 125–26.

The mayor is the chief executive officer of a municipality and has the duty to supervise subordinate municipal officers. TEX. LOC. GOV'T CODE ANN. § 22.042(a) & (b) (West 2008); *see also City of San Antonio v. Robert Thompson & Co.*, 30 S.W.2d 339, 341 (Tex. App.—San Antonio 1930, writ dism'd). Additionally, the mayor "shall inspect the conduct of each subordinate municipal officer and shall cause any negligence, carelessness, or other violation of duty to be prosecuted and punished." TEX. LOC. GOV'T CODE ANN. § 22.042(b).

In support of his plea to the jurisdiction, Strickland provided an affidavit averring that all of his actions regarding this suit were within the scope of his employment as mayor of Liverpool. He averred that when he spoke to Turnipseed about Hopkins, he was responding to a routine employment verification request and that responding to such a request was within the scope of his duties as mayor. Hopkins presented no evidence to dispute this characterization of the mayor's job

6

description. Instead, Hopkins contends that slandering a former employee is not within the scope of the mayor's duties. Yet, an act may still be within the scope of the employee's duties even if the specific act that forms the basis of the civil suit was wrongly or negligently performed, so long as the action was one related to the performance of his job. *See Chambers*, 883 S.W.2d at 658 (holding police officers were acting within the scope of their authority in pursuing a suspect even if driving negligently to do so); *Tex. Dep't. of Pub. Safety v. Tanner*, 928 S.W.2d 731, 735 (Tex.App.—San Antonio 1996, no writ) ("Even if a specific action is wrong or negligent, an officer acts within the scope of his authority when performing the general duties assigned."). We conclude that Strickland acted within the general scope of his duties in talking to Turnipseed when he made the statements to Turnipseed. *See Chambers*, 883 S.W.2d at 658; *Miranda*, 133 S.W.3d at 228.

Strickland further averred that he consulted with the district attorney's office in the scope of his employment in an attempt to collect funds at the request of the city council. Strickland's duties include the prosecution of subordinates for "any negligence, carelessness, or other violation of duty." *See* TEX. LOC. GOV'T CODE ANN. § 22.042(b). Accordingly, consulting with the district attorney's office about a possible misappropriation of funds by a former Liverpool police chief, as alleged by Hopkins, falls within Strickland's duties as mayor.

7

Hopkins responds that in both talking to Turnipseed and consulting with the district attorney's office, personal animus motivated Strickland. Yet, Strickland was completing tasks within his general duties as mayor, and though he may have acted in part to serve his own interests, that does not take the acts outside the scope of his employment. *See Anderson*, 365 S.W.3d at 125–126. We hold that Hopkins has alleged no acts against Strickland that fall outside the general scope of his employment. *See Chambers*, 883 S.W.2d at 658.

*Could Have Been Brought Under the Tort Claims Act*

Given that the pleadings allege acts within the scope of Strickland's employment, Hopkins's suit could have been brought under the Tort Claims Act against Liverpool. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *Franka*, 332 S.W.3d at 375. Hopkins's causes of action are both intentional tort claims for which immunity is not waived. *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ). But all common-law tort theories alleged against a governmental unit, even if not waived under the Tort Claims Act, are assumed to be "under the Tort Claims Act," because it is the Act that delineates governmental tort liability. *Franka*, 332 S.W.3d at 375. We hold that Hopkins's suit against Strickland, while Strickland acted within the general scope of his employment, "could have been brought under the Tort Claims Act" for purposes of section 101.106(f). *See Franka*, 332 S.W.3d at 375; *City of El Paso*

8

*v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); *Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122–23 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that defamation claims against government employees were "under the Tort Claims Act" for purposes of section 101.106).

## Conclusion

We hold that the trial court properly granted Strickland's plea to the jurisdiction pursuant to section 101.106(f) of the Tort Claims Act. We therefore affirm the order of the trial court.


Jane Bland
Justice

Panel consists of Justice Jennings, Bland, and Massengale.