John Christopher FRANKA, M.D., and Nagakrishna Reddy, M.D., Petitioners,

v.

Stacey VELASQUEZ and Saragosa Alaniz, individually and as next friends of their minor child, Saragosa Mario Alaniz, Respondents.

No. 07–0131.

Supreme Court of Texas.

Argued Sept. 10, 2008.

Decided Jan. 21, 2011.

Rehearing Denied April 1, 2011.

Thomas H. Crofts Jr., Crofts & Callaway, P.C., Rosemary L. Hollan, Karen Rau Roberts, Hollan Law Firm, P.C., San Antonio, TX, for John Christopher Franka, M.D.

Gene S. Hagood, Brad Allen Guillory, Hagood, Neumann & Huckeba, L.L.P., Alvin, TX, for Stacey Velasquez.

Michael Patrick Murphy, Assistant Solicitor General, for amicus curiae State of Texas.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

Section 101.106(f) of the Texas Tort Claims Act provides that a suit against a government employee acting within the general scope of his employment must be dismissed "if it could have been brought under this chapter [that is, under the Act] against the governmental unit".[1] The court of appeals construed the quoted clause to mean that, to be entitled to dismissal, the employee must establish that governmental immunity from suit has been waived by the Act.[2] But as we stated in *Mission Consolidated Independent School District v. Garcia:* "we have never interpreted 'under this chapter' to only encompass tort claims for which the Tort Claims Act waives immunity."[3] Rather, "all [common-law] tort theories alleged against a governmental unit ... are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106."[4] Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

**I**

Dr. John Christopher Franka and Dr. Nagakrishna Reddy, petitioners here, delivered S.M.A., the son of Stacey Velasquez and Saragosa Alaniz, respondents, at University Hospital, a public teaching hospital owned and operated by the Bexar County Hospital District, doing business

---

**1.** Tex. Civ. Prac. & Rem.Code § 101.106(f).

**2.** 216 S.W.3d 409, 413 (Tex.App.-San Antonio 2006) ("a trial court ... is not permitted to dismiss employees from a lawsuit under section 101.106(f) if a fact issue exists with regard to whether the governmental unit's immunity is waived").

**3.** 253 S.W.3d 653, 658 (Tex.2008) (citing *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 640 (Tex. 2004), *Dallas Cnty. Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 344 (Tex.1998), and *Newman v. Obersteller,* 960 S.W.2d 621, 622–623 (Tex.1997)).

**4.** *Mission,* 253 S.W.3d at 659 (citing *Newman,* 960 S.W.2d at 622).

as the University Health System.[5] The Hospital is staffed with medical faculty, residents, and students of the University of Texas Health Science Center at San Antonio.[6] Franka was a faculty member employed by the Health Science Center, and Reddy was a resident in the Center's program.

S.M.A.'s fetal heart rate had slowed, and Franka and Reddy thought it best to attempt a vaginal delivery facilitated by a vacuum extractor, an instrument that attaches to the top of a baby's head, helping move it through the birth canal. The head appeared and the extractor was removed, but delivery of the baby's front shoulder was obstructed, a relatively infrequent but well-recognized obstetric emergency known as shoulder dystocia. Franka and Reddy tried to free the baby's shoulder with their hands, but just as it appeared, Reddy heard a snap that she knew meant a bone had broken. The baby's left clavicle was fractured, and he suffered injury to his brachial plexus, requiring surgery several months later.

Velasquez and Alaniz, individually and on behalf of S.M.A., sued Franka and Reddy but not the Center (or the District or Hospital). Franka moved to dismiss the action under section 101.106(f) of the Texas Tort Claims Act, which states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[7]

In their response, plaintiffs acknowledged that Franka was employed by a governmental unit, the Center, and that their suit was based on conduct within the general scope of his employment. But, they argued, to invoke section 101.106(f), Franka had the burden of proving that suit "could have been brought under" the Act, and to discharge that burden, he had to offer evidence that the Center's immunity was waived by the Act. The only basis for such a waiver, they continued, was that their injuries were "caused by a condition or use of tangible personal ... property" under section 101.021 of the Act,[8] and "[n]othing appears in this record to implicate the use or misuse of tangible personal property in causing the orthopaedic and neurological injuries to baby [S.M.A.]." Plaintiffs suggested that the Center stipulate that its immunity from suit was

---

5. The District does business as the University Health System. Its history is summarized on the System's website at http://www.university healthsystem.com/about-university-health system/our-history/.

6. *See Murk v. Scheele*, 120 S.W.3d 865, 866 (Tex.2003) (per curiam) ("University Hospital [is] a public teaching hospital for indigent patients that is owned and operated by the Bexar County Health District and staffed with medical faculty, residents, and students of the University of Texas Health Science Center....").

7. TEX. CIV. PRAC. & REM.CODE § 101.106(f).

8. *Id.* § 101.021 ("A governmental unit in the state is liable for ... personal injury ... caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment ... by a condition or use of tangible personal ... property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

waived. Failing that, they urged that Franka's motion be denied.

Apparently the trial court never ruled on Franka's motion. More than a year passed, and defendants each filed a motion for summary judgment based on section 101.106(f), differing only as to the circumstances of their employment. Each argued that "suit against [them] could have been brought against the [Center] because the conduct of [defendants] on which the allegations are based involved the use of tangible property, namely the vacuum extractor". Each attached an affidavit stating that S.M.A.'s "treatment included the use of tangible property, including a vacuum extractor." And each requested the court to order that "unless [plaintiffs] substitute [the Center] as the defendant, the case will be dismissed in thirty days." Plaintiffs responded that defendants had failed to establish that suit could have been brought against the Center because there was "no evidence that the condition or use of tangible property, the vacuum extractor, was the instrumentality of the harm, and therefore no waiver of immunity". Plaintiffs also argued that defendants had not established that they were government employees as defined by the Act.

■ The trial court denied defendants' motions, and they appealed.[9] The court of appeals affirmed, holding that a government employee is not entitled to dismissal under section 101.106(f) until he has established that his employer's immunity from suit has been waived by the Act.[10] In its view, the argument that

9. Plaintiffs have not questioned the court of appeals' jurisdiction over this interlocutory appeal. "A person may appeal from an interlocutory order of a district court, county court at law, or county court that ... denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state...." TEX. CIV. PRAC. & REM.CODE § 51.014(a). For two reasons, we think defendants' motions for summary judgment were based on an assertion of immunity.

First, in Newman v. Obersteller, we held that section 51.014(a) allowed a school district employee to appeal the denial of his motion for summary judgment seeking dismissal under former section 101.106 because "section 101.106 is an immunity statute." 960 S.W.2d 621, 623 (Tex.1997). At that time, section 101.106 provided simply: "A judgment in an action or settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." Act of May 17, 1985, 69th Leg. R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305, recodifying former TEX.REV.CIV. STAT. ANN. art. 6252–19, § 12(a), Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 12(a), 1969 Tex. Gen. Laws 874, 877 ("The judgment or settlement in an action or claim under this Act shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of a unit of government whose act or omission gave rise to the claim."). We reasoned that the phrase, "bars any action", was "an unequivocal grant of immunity", and that allowing an interlocutory appeal from a refusal to enforce the bar "protects public officials asserting an immunity defense from the litigation process." Newman, 960 S.W.2d at 622. The phrase is not used in current section 101.106(f), but four other subsections speak of a bar from suit or recovery, and we think the character of the statute as one conferring immunity remains unchanged. See TEX. CIV. PRAC. & REM.CODE § 101.106(a)-(d).

Second, section 101.106(f) states that a suit to which it applies "is considered to be against the employee in the employee's official capacity only." Id. § 101.106(f). We have held that "[w]ith the limited ultra vires exception ..., governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers." City of El Paso v. Heinrich, 284 S.W.3d 366, 380 (Tex.2009). By moving for summary judgment on section 101.106(f), defendants were asserting claims of governmental immunity.

10. 216 S.W.3d 409, 413 (Tex.App.-San Antonio 2006).

the raising of a fact issue as to whether the suit "could have been brought under this chapter against the governmental unit" should be sufficient to enable a trial court to dismiss employees under section 101.106(f) ... is untenable in view of its potential result. If the employees were dismissed and immunity was ultimately held not to have been waived, the plaintiffs would be left without a remedy. Just as a plea to the jurisdiction cannot be granted, thereby resulting in the dismissal of a lawsuit, when a fact issue exists, a trial court also is not permitted to dismiss employees from a lawsuit under section 101.106(f) if a fact issue exists with regard to whether the governmental unit's immunity is waived. When such a fact issue exists, the employees have failed to establish that the suit "could have been brought] under this chapter against the governmental unit." [11]

We granted defendants' petition for review.[12]

## II

A threshold issue is whether Franka and Reddy are "employee[s] of a governmental unit" to whom section 101.106(f) applies. In this Court, plaintiffs do not contest Franka's employee status [13] because section 101.001(2) of the Act defines an employee as "a person ... in the paid service of a governmental unit ... [but not] an independent contractor ... or a person who performs tasks the details of which the governmental unit does not have the legal right to control." [14] The Center is a governmental unit,[15] and Franka was a

11. *Id.* (internal citation omitted).

12. 51 Tex.Sup.Ct.J. 771 (Apr. 18, 2008). We have jurisdiction of this interlocutory appeal because the court of appeals' decision conflicts with *Harris Cnty. v. Sykes*, 136 S.W.3d 635 (Tex.2004), *Dallas Cnty. Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339 (Tex.1998), and *Newman v. Obersteller*, 960 S.W.2d 621, 622–623 (Tex.1997), the cases that provided the basis for our decision in *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653 (Tex.2008). *See* Tex Gov't Code § 22.001(a)(2) ("The supreme court has appellate jurisdiction ... extending to all questions of law arising in ... a case in which one of the courts of appeals holds differently from a prior decision of ... the supreme court on a question of law material to a decision of the case ...."); *id.* § 22.001(e) ("For purposes of Subsection (a)(2), one court holds differently from another when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants."); *see also City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 319 (Tex. 2007) (per curiam) ("In 2003, the. Legislature redefined and broadened our conflicts jurisdiction to eliminate the previous requirement that the rulings in the two cases be 'so far

upon the same state of facts that the decision of one case [was] necessarily conclusive of the decision in the other.' *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex.1998).").

13. Respondents' Brief on the Merits 8 ("Velasquez/Alaniz do 'not contest, for the purpose of this appeal, that UTHSC is a "Governmental Unit" ... [or] that Dr. Franka was an employee of UTHSC but do contest Dr. Reddy's alleged employee status.").

14. Tex. Civ. Prac. & Rem.Code § 101.001(2).

15. *See id.* § 101.001(3) (" 'Governmental unit' means ... (B) a political subdivision of this state, ... and (D) any ... institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution."); *see also Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 354 & n. 5 (Tex.2004) (holding that University of Texas Southwestern Medical Center at Dallas, part of University of Texas System, of which University of Texas Southwestern Medical Center at San Antonio is another part, Tex. Educ Code § 65.02(a)(7), is a governmental unit under the Tort Claims Act).

paid member of its faculty.[16]

█ Reddy, however, was a resident under a three-party "Graduate Medical Education Agreement", in which she, the Center, and the District, also a governmental unit,[17] agreed that the District would compensate her but would have no legal right to control the details of her work.[18] Because Reddy was not both paid by and subject to the legal control of the same governmental unit,[19] she states that she "does not claim to be a § 101.001(2) employee."[20]

Instead, Reddy argues that section 312.007(a) of the Texas Health & Safety Code makes her a government employee

16. *See Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex.2003) (per curiam) (a UT Health Science Center faculty member, practicing at the District's hospital but paid by the Center and subject to its regimens and review, was the Center's "employee" for purposes of the Tort Claims Act, even though he was required to exercise some independent medical judgment and not every detail of his work was controlled by the Center).

17. *See* Tex. Civ. Prac. & Rem.Code § 101.001(3), *supra* note 15; *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex.2009) (citing *Martinez v. Val Verde Cnty. Hosp. Dist.*, 140 S.W.3d 370, 371 (Tex.2004)); *cf. Bexar Cnty. Hosp. Dist. v. Crosby*, 160 Tex. 116, 327 S.W.2d 445, 446 (1959) (describing the Bexar County Hospital District as "a political subdivision of the State" created under the constitutional and statutory provisions at issue in the District's declaratory judgment suit against other governmental entities (see Tex. Const. art. IX, § 4 and Act of May 26, 1953, 53rd Leg., R.S., ch. 266, 1953 Tex. Gen. Laws 691, codified formerly as Tex.Rev.Civ. Stat. Ann. art. 4494n and now as Tex. Health & Safety Code §§ 281.001–124)); *see also, e.g.*, Tex. Gov't Code §§ 403.1041(5), 534.002(1)(A); Tex. Health & Safety Code §§ 241.003(6), 285.072 (a contractor managing or operating a hospital under contract with a hospital district is considered a governmental unit for purposes of Chapters 101 (the Tort Claims Act), 102, and 108 of the Civil Practices and Remedies Code); and Tex. Loc. Gov't Code §§ 271.003(4); 271.009(1); 271.091(1), 271.111(10), and 271.151 (contract claims against local governmental entities) (3)(C).

18. Specifically, the agreement stated: "The parties [*i.e.*, the Center, Reddy, and the District] understand that the Resident [*i.e.*, Reddy] performs tasks, namely the practice of medicine, the details of which the [District] does not have legal right to control and no such control is assumed by this Agreement."

*Cf. Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex.2003) (per curiam) ("The Act's definition of 'employee' does not require that a governmental unit control *every* detail of a person's work.... [A] physician [in the "paid service" of a governmental unit and] whose practice is controlled by [that] governmental unit is not precluded from being an 'employee' within the meaning of the Act simply because he or she must exercise some independent medical judgment.").

19. Although Reddy does not assert that the Center had the legal right to control her work, the agreement provided that the Center would "establish and maintain an organized educational program, which provides guidance and supervision of the Resident, facilitating the Resident's professional and personal development while ensuring safe and appropriate care for the patients, in accordance with the institutional policies and procedures of the [Accreditation Council for Graduate Medical Education]." The agreement further provided that the Center would "evaluate the Resident on a regular basis to assess the Resident's level of advancement, practice privileges, duty hour schedule, and the nature of supervision necessary by attending teaching staff." *Cf. St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542–544 (Tex.2003) (plurality op.); *id.* at 544 (O'Neill, J., joined by Phillips, C.J., concurring) (concluding that the evidence did not show that a resident was under the control of the sponsoring hospital).

20. Petitioners' Reply to Respondents' Brief on the Merits 4; *id.* at 6 ("As a result of this unique three-party arrangement, residents could not be deemed an employee of either entity under the Tort Claims Act's general definition of 'employee' as a person who is both paid by and subject to the control of a governmental entity."). We express no opinion on the validity of Reddy's reasoning.

for purposes of section 101. 106(f) of the Act. Section 312.007(a) states:

A medical and dental unit, supported medical or dental school, or coordinating entity is a state agency, and a director, trustee, officer, intern, **resident,** fellow, faculty member, or other associated health care professional or employee **of a medical** and dental **unit,** supported medical or dental school, or coordinating entity **is an employee of a state agency for purposes of ... determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the unit,** school, or entity.[21]

Reddy was a resident of a "medical unit".[22] Recently, in *Klein v. Hernandez,* we held that a resident covered by this section is a government employee for purposes of determining liability under the Act.[23] Since a liability determination may depend on whether the defendant is immune, we agree with Reddy that section 312.007(a), if applicable, would make her a government employee under section 101.106(f).

But plaintiffs argue that Reddy has failed to show that section 312.007(a) applies in this case. Section 312.003 states:

This chapter [including section 312.007] applies only if a medical and dental unit and a supported medical or dental school agree, either directly or through a coordinating entity, to provide or cause to be provided medical, dental, or other patient care or services or to perform or cause to be performed medical, dental, or clinical education, training, or research activities in a coordinated or cooperative manner in a public hospital.[24]

Reddy acknowledges that the applicability of section 312.007(a) is conditioned on the existence of an agreement prescribed by section 312.003, and she argues that the "Graduate Medical Education Agreement" is such an agreement on its face. But the agreement does not include a supported medical or dental school, and even if that is not required, as one court has held,[25] an issue we do not decide, there is nothing in the record to indicate whether or how the agreement furthers the purpose of chapter 312, which is

**21.** Tex. Health & Safety Code § 312.007(a) (emphasis added); *see also* (b) ("A judgment in an action or settlement of a claim against a medical and dental unit, supported medical or dental school, or coordinating entity under Chapter 101, Civil Practice and Remedies Code, bars any action involving the same subject matter by the claimant against a director, trustee, officer, intern, resident, fellow, faculty member, or other associated health care professional or employee of the unit, school, or entity whose act or omission gave rise to the claim as if the person were an employee of a governmental unit against which the claim was asserted as provided under Section 101.106, Civil Practice and Remedies Code.").

**22.** Section 312.002(4) of the Texas Health & Safety Code provides that "[i]n this chapter: ... '[m]edical and dental unit' has the meaning assigned by Section 61.003, Education Code." Section 61.003(5) of the Texas Edu-

cation Code, in turn, defines "medical and dental unit" to include the University of Texas Medical School at San Antonio, where Reddy had her residency, which is part of the Center, *id.* § 65.02(a)(10) ("The University of Texas System is composed of ... The University of Texas Health Science Center at San Antonio, including ... The University of Texas Medical School at San Antonio....").

**23.** 315 S.W.3d 1, 8 (Tex.2010).

**24.** Tex. Health & Safety Code § 312.003.

**25.** *See Bustillos v. Jacobs,* 190 S.W.3d 728, 735 (Tex.App.-San Antonio 2005, no pet.) (holding that an agreement by "a medical or dental unit" to provide medical training and patient care in a public hospital is sufficient to satisfy section 312.003, without joinder of "a supported medical or dental school").

to authorize coordination and cooperation between medical and dental units, supported medical or dental schools, and public hospitals and to remove impediments to that coordination and cooperation in order to:

(1) enhance the education of students, interns, residents, and fellows attending a medical and dental unit or a supported medical or dental school;

(2) enhance patient care; and

(3) avoid any waste of public money.[26]

Further, section 312.004 authorizes medical and dental units, medical and dental schools, coordinating entities, and public hospitals to contract among themselves for, among other things, "the clinical education of ... residents",[27] but section 312.005(a) provides that "[t]o be effective, a contract under Section 312.004 must be submitted to the [Texas Board of Health]."[28] Reddy argues that an agreement that satisfies section 312.003 need not be made under section 312.004, and therefore need not be approved by the Texas Board of Health, but she cites no authority, and nothing in the statutory text supports her argument. The record does not reflect whether the "Graduate Medical Education Agreement", or even the program it facilitated, was approved by the Board; for all we know, the program could have been disapproved by the Board.

In sum, we cannot determine from the summary judgment record that Reddy established as a matter of law that she was an employee of a governmental unit for purposes of section 101.106(f).

## III

■ Franka, to whom section 101.106(f) does apply, was entitled to dismissal only if the plaintiffs' suit "could have been brought under [the Act] against [the Center]".[29] The court of appeals held that the plaintiffs' suit could not have been brought under the Act unless, as a matter of law, the Act waived the Center's immunity from suit.[30] We disagree. We begin by reviewing our cases, which firmly establish the rule that any tort claim against the government is brought "under" the Act for purposes of section 101.106, even if the Act does not waive immunity. Next, we show that to except section 101.106(f) from this rule would be inconsistent with other provisions of the Act and would create disparities in its operation. We then consider the practical problems that would result from the court of appeals' construction. Finally, we consider the policies that underlie the statute as we construe it.

## A

■ We first considered whether a suit for which the Act has not waived immunity is nevertheless "under" the Act for purposes of section 101.106 in *Newman v. Oberstetler.*[31] At that time, section 101.106 stated simply:

26. TEX. HEALTH & SAFETY CODE § 312.001(b).

27. *Id.* § 312.004(c) ("A medical and dental unit, a supported medical or dental school, and a coordinating entity may contract with the owner or operator of a public hospital for the clinical education of students, interns, residents, and fellows enrolled at the unit or school."); *see also id.* § 312.004(a) ("Medical and dental units, supported medical or dental schools, coordinating entities, and public hospitals may make and perform contracts among each other for the coordinated or co-operative clinical education of the students, interns, residents, and fellows enrolled at the units or schools.").

28. *Id.* § 312.005(a).

29. TEX. CIV. PRAC. & REM.CODE § 101.106(f).

30. 216 S.W.3d 409, 412 (Tex.App.-San Antonio 2006).

31. 960 S.W.2d 621, 622 (Tex.1997).

A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.[32]

A high school student and his parents sued his coach and the school district for intentional infliction of emotional distress,[33] alleging that the coach and other school employees had berated, harassed, and intimidated him, once locking him in a locker room by himself.[34] The trial court dismissed the case against the school district based on its assertion of immunity, presumably because the Act does not waive immunity for intentional torts,[35] but refused to dismiss the case against the coach.[36] The court of appeals dismissed the coach's interlocutory appeal for want of jurisdiction, holding that section 101.106 was not a grant of immunity to government employees, the denial of which was subject to interlocutory appeal, but merely a procedural limitation.[37] We reversed, holding that the statute's "bar" of an action against a government employee in effect conferred immunity on the employ-ee.[38] We also rendered judgment against the plaintiffs, holding that the dismissal of their claim against the school district barred their action against the coach.[39] The rule of *Newman* is that a tort claim against the government is "under" the Act even though the Act does not waive immunity from suit.

We followed the rule in *Dallas County Mental Health and Mental Retardation v. Bossley*[40] and again in *Harris County v. Sykes*.[41] In *Bossley*, the plaintiffs sued a mental health treatment facility and its employees for allowing their son to escape, resulting in his death.[42] The trial court dismissed the case, holding that the facility was immune from suit and that suit against the employees was consequently barred by section 101.106, but the court of appeals reversed.[43] We held that the trial court was correct.[44] In *Sykes*, the plaintiff sued the county and its jailor, alleging that while incarcerated in the county jail, he had negligently been assigned a bed near an inmate with tuberculosis.[45] The trial court dismissed the case as the trial court in *Bossley* had done, but the court of ap-

---

**32.** Act of May 17, 1985, 69th Leg. R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305, recodifying former Tex.Rev.Civ. Stat. Ann. art. 6252–19, § 12(a), Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 12(a), 1969 Tex. Gen. Laws 874, 877 ("The judgment or settlement in an action or claim under this Act shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of a unit of government whose act or omission gave rise to the claim.").

**33.** *Newman*, 960 S.W.2d at 622.

**34.** *Newman v. Obersteller*, 915 S.W.2d 198, 203 (Tex.App.-Corpus Christi 1996), *rev'd*, 960 S.W.2d 621 (Tex.1997).

**35.** Tex. Civ. Prac. & Rem.Code § 101.057(2) ("This chapter does not apply to a claim ...

arising out of assault, battery, false imprisonment, or any other intentional tort....").

**36.** *Newman*, 960 S.W.2d at 622.

**37.** *Newman*, 915 S.W.2d at 200–201.

**38.** *Newman*, 960 S.W.2d at 622.

**39.** *Id.* at 623.

**40.** 968 S.W.2d 339, 343–344 (Tex.1998).

**41.** 136 S.W.3d 635, 640 (Tex.2004).

**42.** *Bossley*, 968 S.W.2d at 340–341.

**43.** *Id.* at 341.

**44.** *Id.* at 343–344.

**45.** *Sykes*, 136 S.W.3d at 637.

peals reversed with respect to the jailor.[46] We held that the dismissal of the county barred suit against the jailor.[47]

We elaborated on the rule in *Mission Consolidated Independent School District v. Garcia,*[48] construing a new version of section 101.106, completely revised and greatly expanded in 2003 by House Bill 4, a comprehensive tort reform measure.[49] The revised provision—in which "under this chapter" is used in subsections, (a), (c), (e), and (f)—reads as follows:

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

(d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[50]

In *Mission,* three former employees of the school district sued the district and its superintendent: the district for wrongful termination in violation of the Texas Commission on Human Rights Act,[51] both the district and superintendent for intentional infliction of emotional distress, and the superintendent for defamation, fraud, and negligent misrepresentation.[52] The district sought dismissal under section 101.106(b), asserting that the plaintiffs' suit against the superintendent barred suit against it on the same claims without its consent.[53] The trial court refused to dismiss the case against the district, and the

---

46. *Id.* at 637–638.

47. *Id.* at 640–641.

48. 253 S.W.3d 653, 658 (Tex.2008).

49. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886.

50. TEX. CIV. PRAC. & REM.CODE § 101.106.

51. TEX. LAB.CODE §§ 21.001–21.556.

52. 253 S.W.3d at 655.

53. *Id.*

court of appeals affirmed.[54]

The plaintiffs argued that because they had sued both the district and the superintendent, section 101.106(e) applied, rather than 101.106(b), and because the Act did not waive the district's immunity from suit on either of their claims against it, those claims were not "under" the Act, and therefore dismissal of the superintendent was not required.[55] We concluded that the plaintiffs' argument misconstrued subsection (e), and that correctly construed, the end result under either subsection (b) or (e) would be the same. We analyzed subsection (e) as follows:

> The court of appeals reasoned that none of Garcia's claims were brought "under this chapter" because they did not fit within the Tort Claims Act's waiver, and therefore section 101.106(e) did not apply. However, we have never interpreted "under this chapter" to only encompass tort claims for which the Tort Claims Act waives immunity. To the contrary, in *Newman v. Obersteller*, we held that former section 101.106's limiting phrase "under this chapter" operated to bar an intentional tort claim against an employee after a final judgment on a claim involving the same subject matter had been rendered against the governmental unit, even though the Act by its terms expressly excluded intentional torts from the scope of the Act's immunity waiver. *See also, e.g., Sykes*, 136 S.W.3d at 640 (applying section 101.106 to bar the plaintiff's claim against a governmental employee even though immunity was not waived under the Tort Claims Act for suit against the governmental unit); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 344 (Tex.1998) (dismissing suit against employee when

both the employee and the governmental unit were sued based on negligence theories that were not within the Act's limited waiver). Although these cases construed the prior version of section 101.106, there is nothing in the amended version that would indicate a narrower application of the phrase "under this chapter" was intended. Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106. *See Newman*, 960 S.W.2d at 622.

Having concluded that Garcia's tort claims are not excluded from section 101.106(e)'s application, we examine subsection (e)'s effect if it were applied to this case. Under subsection (e), Dyer would be entitled to dismissal of Garcia's suit against him upon the ISD's filing of a motion. The ISD has not sought Dyer's dismissal, however, and Dyer has not sought his own dismissal under subsection (f). But if the ISD had obtained Dyer's dismissal from the suit under subsection (e), all of Garcia's tort claims against the ISD would be barred because, as we have said, all tort theories of recovery alleged against a governmental unit are presumed to be "under the [Tort Claims Act]." Garcia's suit under the TCHRA, however, is not "a suit filed under this chapter" and would not come within subsection (e)'s purview because the Tort Claims Act expressly provides that the remedies it authorizes "are in addition to any other legal remedies," and the TCHRA provides a statutory remedy for unlawful discrimination.

---

54. *Id.*

55. *Id.* at 658.

*Id.* § 101.003. Claims against the government brought pursuant to waivers of sovereign immunity that exist apart from the Tort Claims Act are not brought "under [the Tort Claims Act]." In sum, if subsection (e) were applied to Garcia's suit and Dyer was dismissed, the only claim against the ISD that would survive would be Garcia's TCHRA claim.[56]

Likewise, only the TCHRA claim survived under section 101.106(b). Because subsection (b) does not contain the "under this chapter" limitation, any suit against a government employee bars suit "against the governmental unit regarding the same subject matter unless the governmental unit consents".[57] While the school district had not itself consented to be sued by the plaintiffs, the TCHRA provided consent for wrongful termination claims, because "the government conveys its consent to suit ... through the Constitution and state laws."[58] "Thus," we concluded, "the Legislature, on behalf of the [school district], has consented to suits brought under the TCHRA, provided the procedures outlined in the statute have been met."[59]

The rule that a tort suit against the government, as distinct from a statutory claim, is brought "under" the Act for purposes of section 101.106, even though the Act does not waive immunity, is firmly grounded in our cases. More importantly, as *Mission* illustrates, with the 2003 revisions to section 101.106, the rule has become necessary for harmonizing the several subsections of the statute.

## B

Although we have not applied the same rule to section 101.106(f) before today, the statutory text suggests we should. The revised statute lifts the phrase "under this chapter" from the prior statute and repeats it four times. The prior statute referred to "an action or settlement of a claim under this chapter". The current version refers to "[t]he filing of a suit under this chapter" in subsection (a), "[t]he settlement of a claim arising under this chapter" in subsection (c), "a suit ... filed under this chapter" in subsection (e), and "a suit [that] ... could have been brought under this chapter" in subsection (f).[60] The text gives no hint that any these references has a different meaning; to the contrary, the repetition strongly suggests that the meaning throughout is the same.

Two other sections of the Act also make plain that suits brought "under" the Act include those for which immunity is not waived. Section 101.103(a) requires the attorney general to "defend each action brought under this chapter".[61] One would hardly suppose that the attorney general would be relieved of this responsibility whenever he thought, as he regularly does, his client's immunity remained intact despite the plaintiff's allegations. Section 101.102, entitled "Commencement of Suit", provides that "[a] suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises."[62] If this applies only to suits for which immunity is waived, can suits for which immunity is not waived, of which there are many, be brought anywhere? One would hardly

56. *Id.* at 658–659 (footnote and some citations omitted).

57. *Id.* at 659–660.

58. *Id.* at 660.

59. *Id.*

60. Tex. Civ. Prac. & Rem.Code § 101.106.

61. *Id.* § 101.103(a).

62. *Id.* § 101.102(a).

think so. These examples serve to illustrate the obvious: that suit is brought under the Act when it is filed, not when waiver of immunity by the Act is established.

Construing subsection (f) as the court of appeals did in this case is not only inconsistent with *Mission* and the Act as a whole, it creates at least a disparity, if not an absurdity, in the statute's operation. If a plaintiff sues only a government employee and not the government, then under subsection (f), according to the court of appeals, the employee need not be dismissed unless a waiver of the government's immunity for the claim is established. But if a plaintiff sues both the government and its employee, then under subsection (e), according to *Mission*, the employee must be dismissed, even if the government's immunity is not waived. There is no reason why an employee should be entitled to dismissal if sued with the government but not if sued alone.

For consistency both within section 101.106 and throughout the Act, subsection (f) must be governed by the same rule *Mission* applied in construing subsection (e).

## C

The court of appeals' construction of section 101.106(f) poses serious practical problems.

Requiring a government employee to prove that his employer's immunity from suit has been waived in order to obtain dismissal forces the parties to take unexpected positions with collateral risks. Ordinarily, one would expect a government employee to support his employer's assertion of immunity. Only a perverse statute would incentivize conflict between the two, and there is nothing to indicate that the Legislature had any such intent. The plaintiff, too, is forced into an awkward position, arguing that immunity was not waived, and thereby cutting off that path to liability and recovery.

Moreover, the employee, the plaintiff, and the employer could all be whipsawed by the trial court's ruling that immunity was waived. Since the government was not a party to the case at the time, it would not be bound by the ruling and would be free to seek a redetermination and to appeal. Exhibit A in support of its arguments that immunity was not waived would be the plaintiff's own assertions. And in response, the plaintiff would cite the employee. The immunity issue would thus be encased in confusion and cynicism.

The predicament for the plaintiff would be even trickier. He would be required to decide within thirty days of the employee's motion to dismiss whether to acquiesce and sue the government instead. Nothing in section 101.106(f) requires the trial court to rule on whether immunity was waived, either before or after the thirty-day deadline. Even if the plaintiff obtained the trial court's ruling before having to decide whether to dismiss the employee, there would be no assurance that the ruling would be upheld on appeal, especially after the issue was relitigated with the government. If the plaintiff refuses to dismiss the employee, he risks being faced with the government's stipulation that immunity was waived, after the deadline for suing the government has run. If he dismisses the employee and sues the government, he has some advantage in being able to defend the government's assertion of immunity with its employee's contrary statements, but he may not be able to prove waiver, even with such statements. Thus, he will have traded a viable claim against the employee for a barred claim against the government.

Section 101.106(f) leaves the timing of a motion to dismiss to the employee. Delay

poses an additional problem for the plaintiff. If he does not notify the government of his claim as required by section 101.101, believing that he has a stronger claim against the employee actor, the government may wait until after the six-month deadline for that notice and then stipulate that immunity was waived, leaving the plaintiff with no cause of action at all. To avoid this result, the plaintiff may notify the government of his claim, but his doing so may be taken as an indication of his position that immunity has been waived, undercutting any later argument that it was not.

These problems, though thorny, may not always occur and may not be insuperable when they do, but they arise at all only under the court of appeals' construction of section 101.106(f). They do not exist if subsection (f) is construed the same way *Mission* construed subsection (e). Properly construed, section 101.106(f)'s two conditions are met in almost every negligence suit against a government employee: he acted within the general scope of his employment [63] and suit could have been brought under the Act—that is, his claim is in tort and not under another statute

that independently waives immunity. In such cases, the suit "is considered to be against the employee in the employee's official capacity only",[64] and the plaintiff must promptly dismiss the employee and sue the government instead. No party is forced into awkward or conflicting positions. The immunity issue need not be determined until the governmental unit is in the suit and the issue can be fully addressed.

This construction of section 101.106(f) does, however, foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment. This changes, among other things, the rule in *Kassen v. Hatley*, which has allowed malpractice suits against physicians employed by the government, even though acting within the scope of employment.[65] Recovery for the negligence of a government physician acting in the course of employment would be limited to that afforded under the Act. At least one participant in the legislative process that resulted in the enactment of House Bill 4 has written that this change was precisely the intent of the revisions to section 101.106.[66] In any event, our construction of section 101.106 is compelled by its text and by the

---

**63.** Whether an employee's intentional tort is within the scope of employment is a more complex issue. *See* generally Restatement (Third) of Agency § 7.07 (2006).

**64.** Tex. Civ. Prac. & Rem.Code § 101.106(f).

**65.** 887 S.W.2d 4, 11 (Tex.1994).

**66.** "Under prior law, many plaintiffs avoided the TTCA's cap on damages, notice provision, and case law interpreting use and misuse of tangible personal property by suing government employees individually. Texas case law had generally held that individual employees were not afforded the defenses and protections contained in the TTCA. Accordingly, by filing suit against the employee under other statutes, a plaintiff could circumvent the TTCA.

"Section 11.05 of H.B. 4 created a new 'Election of Remedies' section under the TTCA. The section effectively requires plaintiffs to sue the governmental unit rather than an employee of the governmental unit.

\*　　\*　　\*

"The net effect of the various new provisions of the TTCA is that a plaintiff will only be able to pursue the governmental entity and not its employees. The amendment also solves the problems Texas courts faced in trying to determine if employees of governmental units were entitled to the defense of official immunity....

"In *Kassen*, the Texas Supreme Court held that health care providers are entitled to official immunity if their acts are governmental in nature and not purely medical. The court's 1994 holding has forced lower courts to conduct a complicated analysis of each fact

rule of *Mission, Sykes, Bossley,* and *Newman.*[67]

## D

Our construction of section 101.106 is also consistent with the Legislature's purposes in enacting House Bill 4.

> pattern in each case. Consequently, *Kassen* did not remove the threat of potential lawsuits against employees of a governmental unit.... H.B. 4 addressed those concerns by requiring that lawsuits be brought against the governmental unit instead of its employees. As a result, the need for determining if official immunity applies is eliminated."
>
> Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Three,* 36 TEX. TECH L.REV. 169, 290–293 (2005) (footnotes omitted).

**67.** Two courts of appeals appear to have recognized that *Mission* requires the construction of section 101.106(f) we adopt. *Castro v. McNabb,* 319 S.W.3d 721, 731–732 (Tex.App.-El Paso 2009, no pet.); *Kelemen v. Elliott,* 260 S.W.3d 518, 524 (Tex.App.-Houston [1st Dist.] 2008, no pet.). We disapprove the cases that have adopted a different construction. *See McFadden v. Oleskey,* No. 03–09–00187–CV, 2010 Tex.App. LEXIS 6806, at *24, 2010 WL 3271667, at *8 (Tex.App.-Austin Aug. 19, 2010, no pet.); *Illoh v. Carroll,* 321 S.W.3d 711, 716–717 (Tex.App.-Houston [14th Dist.] 2010, pet. filed); *Menefee v. Medlen,* 319 S.W.3d 868, 875–877 (Tex.App.-Fort Worth 2010, no pet.); *Reedy v. Pompa,* 310 S.W.3d 112, 119 (Tex.App.-Corpus Christi–Edinburg 2010) (petition granted Jan. 21, 2011); *Lieberman v. Romero,* No. 05–08–01636–CV, 2009 Tex.App. LEXIS 8414, at *4–5, 2009 WL 3595128, at *2 (Tex.App.-Dallas Nov. 3, 2009) (mem. op.) (petition granted Jan. 21, 2011); *Terry A. Leonard, P.A. v. Glenn,* 293 S.W.3d 669, 681–682 (Tex.App.-San Antonio 2009) (petition granted Jan. 21, 2011); *Escalante v. Rowan,* 251 S.W.3d 720, 727–729 (Tex.App.-Houston [14th Dist.] 2008) (petition granted Jan. 21, 2011); *Lanphier v. Avis,* 244 S.W.3d 596, 600 (Tex.App.-Texarkana 2008, pet. filed); *Hall v. Provost,* 232 S.W.3d 926, 928–929 (Tex.App.-Dallas 2007, no pet.); *Turner v. Zellers,* 232 S.W.3d 414, 417–419 (Tex.App.-Dallas 2007, no pet.); *Kanlic v. Meyer,* 230 S.W.3d 889, 893–894 (Tex.App.-El Paso 2007, pet. filed); *Clark v. Sell ex rel. Sell,* 228 S.W.3d 873, 874–875 (Tex.App.-Amarillo 2007) (petition granted Jan. 21, 2011); *Sheth v. Dearen,* 225 S.W.3d 828, 830 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *Tex. Dep't of Agric. v. Calderon,* 221 S.W.3d 918, 922–923 (Tex.App.-Corpus Christi–Edinburg 2007, no pet.); *Walkup v. Borchardt,* No. 07–06–0040–CV, 2006 Tex.App. LEXIS 10333, at *1–2, 2006 WL 3455254, at *1 (Tex.App.-Amarillo Nov. 30, 2006, no pet.); *Tejada v. Rowe,* 207 S.W.3d 920, 925 (Tex.App.-Beaumont 2006, pet. filed); *Williams v. Nealon,* 199 S.W.3d 462, 466–467 (Tex.App.-Houston [1st Dist.] 2006) (petition granted Jan. 21, 2011); *Phillips v. Dafonte,* 187 S.W.3d 669, 676–677 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer[68] with one exception: an action alleging that the employee acted *ultra vires.*[69] With that exception, an employee sued in his official capacity has the same govern-

**68.** *Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 844 (Tex.2007) ("It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.' *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *see also Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 581 (Tex. 2001). A suit against a state official in his official capacity 'is *not* a suit against the official personally, for the real party in interest is the entity.' *Graham,* 473 U.S. at 166, 105 S.Ct. 3099 (emphasis in original). Such a suit actually seeks to impose liability against the governmental unit rather than on the individual specifically named and 'is, in all respects other than name, ... a suit against the entity.' *Id.; see also Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855–56 (Tex.2002).").

**69.** *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372, 373 (Tex.2009) ("[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money. To fall within this *ultra vires* exception, a suit

mental immunity, derivatively, as his government employer.[70] But public employees (like agents generally[71]) have always been individually liable for their own torts, even when committed in the course of employment,[72] and suit may be brought against a government employee in his individual capacity.[73] Generally, however, public employees may assert official immunity[74] "from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."[75] Of course, determining whether actions and decisions are discretionary "is admittedly problematic".[76] Importantly, for government employees with medical responsibilities, we held in *Kassen* that government discretion does not include medical discretion.[77] Thus, official immunity does not

protect a physician sued in his individual capacity from liability for medical decisions and actions.

■ Before the Tort Claims Act was passed in 1969, if suit against the government was barred by immunity, a plaintiff could sue and recover against a government employee-actor in his individual capacity even though, were he sued for the same conduct in his official capacity, he would be shielded by derived governmental immunity. The employee's official immunity would not bar suit or recovery if his conduct were non-discretionary, medical, or not done in good faith. Under the Act, a waiver of governmental immunity does not preclude an assertion of official immunity,[78] but a successful assertion of

must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.... But the *ultra vires* rule is subject to important qualifications. Even if such a claim may be brought, the remedy may implicate immunity.").

**70.** *Id.* at 380 ("With the limited *ultra vires* exception ..., governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers."); *Koseoglu*, 233 S.W.3d at 844 ("When a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself.").

**71.** *E.g. Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex.2002); *Leonard v. Abbott*, 366 S.W.2d 925, 928–929 (Tex.1963).

**72.** *House v. Houston Waterworks Co.*, 88 Tex. 233, 31 S.W. 179, 181 (1895) ("It is well settled that a public officer or other person who takes upon himself a public employment is liable to third persons in an action on the case for any injury occasioned by his own personal negligence or default in the discharge of his duties." (internal quotation marks and citation omitted)).

**73.** *Heinrich*, 284 S.W.3d at 373 n. 7 ("State officials may, of course, be sued in both their official and individual capacities.").

**74.** *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422–424 (Tex.2004) (discussing the history of official immunity in Texas law, noting that it has been accorded officials, law enforcement and emergency officers, and physicians, and holding that board of adjustment members can assert it). We have not held that every government employee may assert official immunity, but I am not aware of a case denying it.

**75.** *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

**76.** *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994).

**77.** *Id.* at 11–12.

**78.** *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex.1995) ("Whether the Texas Tort Claims Act waives sovereign immunity in a given case does not affect whether the governmental employee may assert official immunity as a defense."); Tex. Civ. Prac. & Rem.Code § 101.026 ("To the extent an employee has individual immunity from a tort claim for damages, it is not affected by this chapter.").

official immunity results in a waiver of governmental immunity.[79]

In waiving governmental immunity, the Legislature correspondingly sought to discourage or prevent recovery against an employee. As already discussed, the original enactment of the Act in 1969 contained a provision substantively identical to section 101.106 before its revision in 2003. That provision was strikingly similar to language in the 1949 Federal Tort Claims Act.[80] The federal provision was amended in 1961 to make the FTCA the exclusive remedy for motor vehicle accidents involving federal employees acting within the scope of their employment,[81] but through

the years, judicial application of official immunity was not entirely uniform.[82] In 1988, the United States Supreme Court held in *Westfall v. Erwin* that for a federal employee to be immune from suit on a common law tort, he must show not only that he was acting within the scope of employment but also that he was performing a discretionary function.[83] Congress viewed the second requirement as exposing employees to unwarranted liability [84] and quickly passed the Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act, which provided immunity to all employees acting within the scope of employment,[85]

---

79. *DeWitt*, 904 S.W.2d at 654 (section 101.121 of the TTCA "predicate[s] the governmental unit's respondeat superior liability upon the liability of its employee").

80. 28 U.S.C. § 2676 ("The judgment in an action under [the Federal Tort Claims Act] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."). We noted the similarity in *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex.1995).

81. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425, 115 S.Ct. 2227, 132 L.Ed.2d 375 (U.S.1995) (citing Pub.L. 87–258, § 1, 75 Stat. 539).

82. *See, e.g., Barr v. Matteo*, 360 U.S. 564, 574–575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (Justice Harlan, joined by Justices Frankfurter, Clark, and Whittaker, concluded that, under the circumstances in the record, the alleged libel could not be said to be an inappropriate exercise of discretion by an agency head; it would be unduly restrictive to hold a public statement of agency policy, on a matter of wide public interest, by a policy-making executive official, was not an action in the line of duty, and the "fact that the action was within outer perimeter of the petitioner's line of duty is enough to render the privilege applicable, despite the allegations of malice"), and *Poolman v. Nelson*, 802 F.2d 304, 308 & n. 2 (8th Cir.1986) (holding

that a Farmers Home Administration county supervisor was immune from a would-be borrower's suit over alleged misrepresentations because those actions fell "within the outer perimeter" of the county supervisor's authority, citing, *inter alia, Barr*, 360 U.S. at 571, 79 S.Ct. 1335).

83. 484 U.S. 292, 296–297, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988); *see also* H.R. REP. No. 100–700, at 2 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5946 ("[I]n Westfall, the Supreme Court added an additional requirement for immunity when a Federal employee is sued in his personal capacity. Now, the Federal employee not only must have been acting within the scope of employment (the original standard), but also must have exercised governmental discretion in acting.").

84. *See* H.R. REP. No. 100–700, at 2 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5946 ("[N]early all actions against Federal employees in their personal capacity were unsuccessful because those employees were acting in the course and scope of employment, and therefore were immune from personal liability").

85. 28 U.S.C. § 2679("(b)(1) The remedy against the United States provided by [the Federal Tort Claims Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his

" 'return[ing] [them] to the status they held prior to the *Westfall* decision.' " [86] The Westfall Act made whatever remedy the FTCA provided against the United States a claimant's exclusive remedy for a government employee's conduct in the scope of employment.

House Bill 4's revision of section 101.106 achieves the same end under Texas law as the Westfall Act does under federal law. As it affects government-employed physicians, it is generally consistent with the Legislature's concerns regarding health care costs, also expressed in the bill.[87] We recognize that the Open Courts provision of the Texas Constitution "prohibits the Legislature from unreasonably abrogating well-established common-law claims",[88] but restrictions on government employee liability have always been part of the tradeoff for the Act's waiver of immunity, expanding the government's own liability for its employees' conduct,[89] and thus "a reasonable exercise of the police power in the interest of the general welfare." [90] In any event, no constitutional challenge is made in this case.

\*   \*   \*

Accordingly, we hold that for section 101.106(f), suit "could have been brought" under the Act against the government regardless of whether the Act waives immu-

nity from suit. We reverse the judgment of the court of appeals and remand to the trial court for further proceedings.

Justice MEDINA filed a dissent, in which Justice LEHRMANN joined.

Justice GUZMAN did not participate in the decision.

Justice MEDINA, joined by Justice LEHRMANN, dissenting.

In *Kassen v. Hatley,* we held that government-employed medical personnel were not entitled to the defense of official immunity when sued individually for the negligent exercise of purely medical judgment. 887 S.W.2d 4, 11 (Tex.1994). Recognizing that medical decisions were typically unrelated to governmental discretion, we concluded that public-sector patients should have the same rights as private-sector patients when only medical judgment was at issue. *Id.* 11–12. Today, the Court abandons that principle, not because *Kassen* was wrongly decided, but because the Legislature has amended section 101.106 of the Tort Claims Act. TEX. CIV. PRAC. & REM.CODE § 101.106. Because this amendment does not speak to the official immunity of physicians accused of malpractice and does not require that we abandon *Kassen,* I respectfully dissent.

office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred. (2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which

such action against an individual is otherwise authorized.").

86. *Gutierrez de Martinez,* 515 U.S. at 426, 115 S.Ct. 2227 (quoting H.R. REP. No. 100–700, at 4 (1988), 1988 U.S.C.C.A.N. 5945, 5947).

87. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884.

88. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 202 (Tex.2002).

89. *See Thomas v. Oldham,* 895 S.W.2d 352, 357–358 (Tex.1995).

90. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995).

## I

The Texas Tort Claims Act[1], does not waive the state's immunity generally for the medical malpractice of its doctors. Instead, it waives the state's sovereign or governmental immunity for, among other things, personal injury "caused by a condition or use of tangible . . . property." TEX. CIV. PRAC. & REM.CODE § 101.021(2). Texas courts have struggled with the meaning and application of the quoted phrase since the Act's adoption over forty years ago. *See Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 590 (Tex.2001) (Hecht, J. concurring) (lamenting that judicial decisions "have done so little to infuse the Act's use-of-property standard with meaning that the task now appears hopeless"). Although the standard lacks clarity, it is clear that medical negligence will sometimes not involve the use of property. Consider the facts in this case.

The asserted medical malpractice concerns a brachial plexus injury to an infant during delivery. The brachial plexus is a network of nerves that conducts signals from the spine to the shoulder, arm, and hand. These nerves were allegedly damaged when one of the infant's shoulders became stuck during delivery and was accidentally broken.

The parents' theory was that the doctors ignored numerous warning signs indicating the need for a Caesarean delivery. The parents supported their theory with an expert report that listed the risk factors presented in the case. The report concluded that the doctors had "departed from the standard of care by failing to recognize that [the mother and fetus] demonstrated these six significant risk factors for the development of shoulder dystocia leading to an improper attempt at vaginal delivery rather than a Caesarean delivery that would have avoided the shoulder fracture and brachial plexus nerve injury sustained at birth."

The doctors moved to dismiss, contending that the parents should have sued their employer, UTHSC, rather than the doctors individually because a vacuum extractor was used during delivery. To invoke a waiver of governmental immunity conditioned upon a "use of property" there must be a causal link between the property's use and the patient's injury.[2] The court of appeals concluded that there was no such causal link here because neither the pleadings nor the evidence implicated the vacuum extractor as a cause of injury. 216 S.W.3d at 411–13. The court observed that the progress notes, the expert report, and the deposition testimony of the two doctors established that the vacuum extractor was used only to deliver the infant's head. *Id.* at 411. A number of additional maneuvers, involving only the doctors' hands, were used after that to deliver the infant's shoulders at which time the injury occurred. *Id.*

When a governmental employee causes injury, section 101.106 of the Tort Claims Act purports to give the injured person a choice of suing the government, or its employee, or both. TEX. CIV. PRAC. & REM.

---

1. The Tort Claims Act waives the state's sovereign immunity "for certain tort claim involving automobiles, premises defects, or the condition or use of property." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex.2007); *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.001(3)(A)-(B), 101.021, 101.022, 101.025.

2. *See Tex. Natural Resource & Conservation Comm'n v. White*, 46 S.W.3d 864, 868, 869 (Tex.2001) (property's use "must have actually caused the injury"); *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 344 (Tex.1998) ("personal injury or death must be proximately caused by a condition or use of tangible personal or real property").

CODE § 101.106. I say purports because the Court holds that this provision is a sham; it does not actually provide the putative plaintiff any choice in the matter. The statute's title and text indicate, however, that the Court is wrong. The statute plainly puts the plaintiff to an election[3] at the time of filing suit with different consequences following the various choices.

Although not pertinent to this appeal, the statute also covers the consequences of a settlement or judgment. *Id.* § 101.106(c), (d). Before its amendment in 2003, section 101.106 applied exclusively to settlements and judgments and provided simply that a plaintiff could not sue the employee after a judgment or settlement with the government.[4] We characterized the employee's right under the former provision as an immunity from liability. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339,

344 (Tex.1998); *see also Newman v. Obersteller,* 960 S.W.2d 621, 622 (Tex.1997). The 2003 amendments have expanded the statute's scope but have not changed its character. The statute continues to create immunity from liability but now includes decisions made at the time of filing suit in addition to settlements and judgments.

Under the current statute, a plaintiff who sues only the government is barred from subsequently suing the government's employee "regarding the same subject matter." TEX. CIV. PRAC. & REM.CODE § 101.106(a). The plaintiff may elect to sue both the government and its employee, but the statute grants the government the unconditional right to have its employee dismissed from the suit if the plaintiff makes that election. *Id.* § 101.106(e). If the plaintiff does not want to sue the gov-

---

3. § 101.106. **Election of Remedies**

   (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
   (b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.
   (c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.
   (d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.
   (e) If a suit is filed under this chapter against both a governmental unit and any

   of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.
   (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.
   TEX. CIV. PRAC. & REM.CODE § 101.106.

4. The former provision, titled, "Employees Not Liable after Settlement or Judgment," provided that "[a] judgment in an action or a settlement of a claim under [the Tort Claims Act] bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose action or omission gave rise to the claim." *See id.* § 101.106 (1997) (amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 886).

ernment, the plaintiff may sue the employee individually in which case the statute bars the plaintiff from subsequently suing the government "regarding the same subject matter unless the governmental unit consents." *Id.* § 101.106(b). Even when the plaintiff sues the employee individually, the employee may obtain his or her dismissal under the conditions set out in section 101.106(f).

Subpart (f) provides that the employee shall be dismissed when the suit "is based on conduct within the general scope of that employee's employment and ... could have been brought under this chapter against the governmental unit." *Id.* § 101.106(f). There are therefore three conditions for the employee's dismissal under subpart (f): (1) the employee must have been employed by a governmental unit at the time of the incident; (2) the suit must be based on conduct within the scope of that employment; and (3) the plaintiff must have been able to bring the claim against the governmental employer under this chapter. "Under this chapter" refers to chapter 101 of the Civil Practice and Remedies Code, commonly known as the Texas Tort Claims Act. *Id.* § 101.002. Although there is some question about the employment of one of the doctors in this case, the question as to both doctors is whether the plaintiffs' medical malpractice action "could have been brought" against the governmental unit, UTHSC, under the Tort Claims Act.

## II

The Court and I disagree about the meaning of the last condition—whether suit "could have been brought under this chapter against the governmental unit." I would hold that this condition refers to those tort claims for which the government has consented to suit under the Tort Claims Act. The Court attributes a broad-

er meaning to the phrase, indicating that it includes all tort claims filed against a governmental employee individually without regard to whether the government has consented to be sued.

The Court reasons that because it is possible to sue the government for medical malpractice under the Tort Claims Act, albeit under limited circumstances, plaintiffs must sue the government, instead of their doctors individually, even when those limited circumstances do not exist. In the Court's view, the statute is not about giving the plaintiff the right to choose the appropriate defendant but rather about making the government the defendant in all tort cases arising out of its employees' conduct. The Court finds it immaterial that the plaintiffs filed their tort claim against the doctors individually, did not seek to join the government, and presumably do not believe they have an actionable tort claim against the government because governmental immunity has not been waived as to their claim. By ignoring the plaintiffs' election and the reasons for it, the Court effectively reads the "could have been brought" condition out of the statute, holding instead that plaintiffs may sue only the government for the medical malpractice of its publicly-employed physicians. "Whatever merits this holding may have as a rule of law do not include fidelity to language and precedent." *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 14 (Tex. 2000) (Hecht, J. dissenting.)

The Attorney General, as Amicus Curiae in this case, shares my concern about the Court's construction of the statute. He appropriately notes that the phrase "could have been brought" is unique to subpart (f). In contrast, references to the filing of suit are made repeatedly throughout section 101.106. *See, e.g.,* Tex. Civ. Prac. & Rem.Code § 101.106(a), (b), (e), (f). The Attorney General submits that the Legis-

lature purposefully chose the term "brought" rather than "filed" to indicate a substantive distinction from the mere physical process reflected in the introductory clause of subpart (f) ("[i]f a suit is filed") and the similar use of the term "filing" or "filed" in subparts (a), (b), and (e). The Attorney General further submits that the Legislature intended for the phrase "could have been brought" to mean something different than could have been filed. To equate "brought" with "filed", argues the Amicus, is to render subpart (f)'s principle condition superfluous. Anyone can physically file a claim against the government, but not every claim filed against the government is actionable. The Attorney General concludes that the "could have been brought" condition can only refer to actionable claims against the government, that is, tort claims for which the government has consented to be sued.

I agree that the phrase "could have been brought" refers to actionable claims against the government. Unlike the Court, I believe that the "Election of Remedies" provision puts the plaintiff to an election at the suit's outset as its title suggests. And although the statute seeks to shape that election, it does not prohibit plaintiffs from suing governmental employees in their individual capacity.

When a plaintiff elects to sue only the governmental employee as in this case, subparts (b) and (f) are implicated by the plaintiff's choice. TEX. CIV. PRAC. & REM. CODE §§ 101.106(b), (f). Subpart (b) binds the plaintiffs to their election and bars them from suing the government regarding the same subject matter. *Id.* § 101.106(b). Subpart (b), however, excepts from its bar certain claims for which the government has given its consent, and

subpart (f) explains the procedure to obtain this exception.

Under subpart (f), the plaintiff is given a limited time to reconsider its suit against the employee and decide anew whether the government should have been sued instead. If the government has consented to suit, the plaintiff is well-advised to substitute the government for two reasons. First, the plaintiff cannot prevail on its claim against the employee if the plaintiff's suit "could have been brought against" the government. *Id.* § 101.106(f). And second, the plaintiff cannot sue the government under subpart (f)'s exception if the claim against the employee is not promptly dismissed.[5] *Id.*

Subpart (f)'s "could have been brought" condition refers back to subpart (b)'s requirement of government consent. A suit that "could have been brought" against the government then is one for which the government has consented to be sued. Together subparts (b) and (f) require proof of the government's consent to suit as a condition for the employee's dismissal.

The government consents to suit "through the Constitution and state laws." *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 660 (Tex.2008). The Tort Claims Act is one such law, providing consent for certain tort claims involving the operation of automobiles, the condition or use of property, and premises liability. TEX. CIV. PRAC. & REM.CODE §§ 101.021, 101.022. The government, however, has not specifically consented to be financially responsible for the medical malpractice of its doctors.

A publicly-employed doctor, who is sued individually for malpractice but seeks to obtain his or her dismissal under subpart

---

**5.** If the plaintiff does not dismiss the case against the employee within thirty days of the employee's motion under subpart (f), subpart (b) will bar any subsequent action against the government. TEX. CIV. PRAC. & REM.CODE § 101.106(b), (f).

(f), must therefore establish the government's consent to be sued for the specific conduct at issue. If this cannot be established, then the government has not consented to suit, and the plaintiff's claim against the employee individually must proceed. Subpart (b) requires nothing less. *See* TEX. CIV. PRAC. & REM.CODE § 101.106(b) (describing the suit against the employee as an "irrevocable election" that "immediately and forever bars" suit against the government unless it "consents").

The trial court therefore correctly denied the motion to dismiss because under the present record the doctors did not establish the government's consent.

### III

The Court maintains, however, that requiring the doctors to prove the government's consent as a condition to dismissal under subpart (f) would be inconsistent with a recent case in which we applied another part of the statute. *See Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 658–60 (applying § 101.106(e)). I fail to see the inconsistency. *Mission* involved subpart (e), rather than (f), because the plaintiffs filed suit against the government and its employees. Because the respective subparts apply to distinctly different circumstances, there is no conflict.

In *Mission*, three terminated school district employees sued the district and its superintendent for wrongful termination and various common law claims that did not fit under the Tort Claims Act's limited waiver of immunity. *Id.* at 655. One issue in the case concerned the application of section 101.106(e). The court of appeals concluded that the section did not apply because none of the plaintiffs' claims fit within the Tort Claims Act's waiver of immunity. The court reasoned that none of the claims were, in the words of the statute, "under this chapter." *Id.* at 658.

We disagreed, observing that any tort claim against the government, even those for which immunity had not been waived, falls "under this chapter" because the Tort Claims Act is the only means to sue the government for a tort:

> Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106.

*Id.* at 659. *Mission* then merely followed the rule that a tort claim against the government is "under" the Act even when the Act does not waive immunity.

This rule has never been extended to tort suits against government employees individually, but the Court submits that the circumstances are similar enough that it should be. I disagree. The circumstances are not similar, and the statute treats each situation differently.

Subpart (e) grants the government an unconditional right to have its employee dismissed from the suit when the plaintiff elects to sue both the government and its employee. Contrast that with the conditions attached to the employee's motion to dismiss under subpart (f). Clearly, the government's burden under (e) is much different.

When a plaintiff sues both the government and its employees under (e), the employees have been joined in their official capacity as a matter of law, and the government has the right to have them dismissed. When government employees are sued individually under subpart (f), however, their status is a question of fact. In this instance, the employees themselves

must establish their official capacity by proving, among other things, that suit could have been brought against their employer. If the employees cannot carry this burden, the suit against them in their individual capacity must proceed. In contrast, subpart (e) imposes no burden on the government to demonstrate that suit could have been brought against it under the Tort Claims Act for a simple reason: the plaintiff has already brought suit against the government.

The statute therefore treats employees sued individually differently than it does employees sued together with the government. The Tort Claims Act applies as a legal matter under subpart (e) because the government has been sued, but its application under subpart (f) depends on factual proof. The burden of that proof must fall on the employee, the party who must move to dismiss the case under subpart (f).

The statute carefully distinguishes between suits against the government and suits against government employees individually. When referring to suits filed or brought against the government the statute inserts the phrase "under this chapter" but when referring to suits against the employee individually the phrase is omitted. *Compare* TEX. CIV. PRAC. & REM.CODE §§ 101.106(a),[6] (c),[7] & (e)[8] *with id.* §§ 101.106(b),[9] (d),[10] & (f).[11] Although "under this chapter" appears in subpart (f) when referring to the possibility of a suit against the government, the phrase is not used to describe the suit actually filed against the employee individually. *See id.* § 101.106(f) ("If suit is filed against an employee of a governmental unit based on conduct ... and if it could have been brought under this chapter against the governmental unit ..."). Suits against government employees individually are not "under this chapter" because a plaintiff does not need the government's consent to seek a personal liability judgment against an individual. Because subparts (e) and (f) apply under different circumstances, our decision in *Mission* is in my view not particularly relevant to the decision in this case.

## IV

I further disagree with the Court's principal assumption that the 2003 amendments were intended to overrule our decision in *Kassen v. Hatley*. The case has no apparent connection to these amendments. *Kassen* is not mentioned in any floor debate, bill analysis, or other piece of legislative history. Ordinarily when the Legislature intends for legislation to supercede one of our decisions, it will at least mention the object of its disagreement with us.

The only support the Court can muster for its unfounded assumption is a law review article, published two years after the amendment and authored by a private party, whom the Court generously describes as a "participant in the legislative

6. "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election ..."

7. "The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee ..."

8. "If a suit is filed under this chapter against both a governmental unit and any of its employees ..."

9. "The filing of a suit against any employee of a governmental unit constitutes an irrevocable election ..."

10. "A judgment against an employee of a governmental unit shall immediately and forever bar ..."

11. "If a suit is filed against an employee of a governmental unit based on conduct ..."

process." 332 S.W.3d at 381. We have repeatedly expressed "our consistent view that '[e]xplanations produced, after the fact, by individual legislators are not statutory history, and can provide little guidance as to what the legislature collectively intended.'" *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 444 (Tex. 2009) (quoting *In re Doe*, 19 S.W.3d 346, 352 (Tex.2000))(citations and quotations omitted). In this particular case, the supposition of a private observer apparently carries more weight. If the Legislature intended for this legislation to prohibit medical malpractice claims against publicly-employed physicians, it has done a masterful job of concealing that intent.

Because the law review article, on which the Court relies, is not particularly convincing, the Court offers another purpose for the legislation. The Court suggests that the 2003 amendment may have been intended to conform the Texas Tort Claims Act to the Federal Tort Claims Act. More specifically, the Court imagines that the 2003 amendment to section 101.106, commonly known as the "Election of Remedies" provision, is Texas' version of the Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act. Again, evidence to support its thesis is non-existent.

One need only compare the language of the respective bills to reveal the utter folly of this notion. The Westfall Act provides that the remedy provided by the Federal Tort Claims Act for injury, property loss, or death "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is *exclusive* of any other civil action" and expressly "*preclude[s]*" any other action "relating to the same subject matter against the employee or the employee's estate." *See* 332 S.W.3d at 384–85 n. 85 (quoting the Westfall Act, 28 U.S.C. § 2679(b)(1) (emphasis added)). In contrast to the exclusive and preclusive nature of the Westfall Act, section 101.106 ostensibly provides a choice of remedies.

In lieu of examining section 101.106's language, the Court assumes that the Texas Tort Claims Act should be like the federal act. There are, however, significant differences between the two. For instance, the Federal Tort Claims Act does not condition the waiver of governmental immunity on the use of automobiles or the condition or use of real or personal property, as does Texas, but instead broadly permits persons to sue the United States in federal court for money damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The federal act thus generally waives governmental immunity for the negligence of its employees, which would include medical malpractice. There is no possibility for the disconnect between the doctor's liability and that of the government employer as under Texas law. This difference reasonably explains why our Legislature chose, when amending our Act, to require proof of the government's consent as a condition for the dismissal of the plaintiff's otherwise actionable, common law claim against the doctor individually.

Enamored more with the federal act than our own, the Court has chosen to conform section 101.106 to the federal scheme. Instead of six subparts, dealing with different combinations of defendants

and the possibilities of settlement or judgment, the Court concludes that the Legislature intended simply this: If suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment, the suit shall be dismissed on the employee's motion and the governmental unit substituted as the defendant. Because the Westfall Act precludes suit against government employees, the Court concludes our now misnamed election-of-remedies provision should do the same.

Section 101.106's language reveals, however, that our Legislature did not intend to mimic the Westfall Act. While the Legislature intended to encourage suits against the government in lieu of actions against government employees, section 101.106 does not compel it. Instead, it requires that plaintiffs choose their defendants wisely or suffer the consequences. Subpart (f) is the centerpiece of the scheme, creating a new immunity or "official capacity" defense for employees who can establish that the government should be, or should have been, the defendant.

This "official capacity" defense should not be confused with the common law doctrine of official immunity. Official capacity as used in this statute is shorthand for the conduct of a government employee meeting section 101.106(f)'s conditions: a suit "based on conduct within the general scope of that employee's employment [that] could have been brought ... against the governmental unit[.]" TEX. CIV. PRAC. & REM.CODE § 101.106(f). Official immunity, on the other hand, "protects government officers from personal liability in performing discretionary duties in good faith within the scope of their authority." *Kassen*, 887 S.W.2d at 8. Government medical personnel, such as the doctors here, enjoy immunity from liability when exercising their governmental discretion, but this immunity

does not extend to medical discretion. *Id.* at 11–12. The exercise of medical discretion, however, does not disqualify doctors from being employees of a governmental unit for purposes of the "official capacity" defense extended under section 101.106(f). *Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex. 2003) (per curiam).

To establish this defense, the doctors had to prove that: (1) the suit against them was "based on conduct within the general scope of that employee's employment" and (2) the suit "could have been brought under [the Tort Claims Act] against the governmental unit[.]" TEX. CIV. PRAC. & REM.CODE § 101.106(f). Substituting the federal scheme for our Legislature's, the Court reads the "could have been brought" condition out of the statute or, in the words of our Attorney General, renders the condition "superfluous."

Statutory language should not be read as pointless if it is reasonably susceptible of another construction. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex.1995). Moreover, when construing a statute, we are to consider the law's objective and the consequences of a particular construction. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex.2004) (citing TEX. GOV'T CODE § 311.023(1), (5)). Consider the consequences of the Court's interpretation—that "could have been brought" refers to nothing more than the physical act of filing suit.

Under that view, the statute nonsensically requires the plaintiff to bring a claim over which the court lacks subject matter jurisdiction. *See, e.g., Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004) (noting that sovereign immunity "defeats a trial court's subject matter jurisdiction unless the state expressly consents to suit"). That suit "could" actually be brought against the government implies a legal possibility, but it is not possible to sue the

government without its consent. Worse yet, the claimant is compelled to dismiss an actionable medical malpractice claim against his or her doctor for the nonexistent claim against the government. If this were to occur, one might reasonably question the constitutionality of subpart (f), as applied, under our Open Courts provision. TEX. CONST. art. I § 13. We presume, however, that the Legislature intended to comply with the state and federal constitutions, TEX. GOV'T CODE § 311.021(1), and "we are obligated to avoid constitutional problems if possible." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169 (Tex.2004). The Court's opinion ignores these rules of statutory construction.

## V

Finally, the Court justifies its misconstruction of the statute by suggesting that it would create perverse incentives, conflicts of interest, or opportunities for gamesmanship if the employee were required to establish the government's consent to be sued as a condition for dismissal. As to its gamesmanship charge, the Court suggests that the government might be able to defeat the plaintiff's claim against its employee by merely stipulating to the waiver of governmental immunity after it is too late for the plaintiff to sue under the Tort Claims Act. This is hardly a legitimate concern. The state's immunity is waived "through the Constitution and state laws," not by the stipulations of its functionaries. *See Mission*, 253 S.W.3d at 660. Even if UTHSC were willing to stipulate that the doctor's use of the vacuum extractor caused the infant's brachial plexus injury, a court would not be required to accept its self-serving declaration as fact.

That the Court would even consider this a possibility underscores its misunderstanding of the statute and its imagined "perverse" effects.

What could possibly be more perverse than the Court's application of this statute? Under the Court's view, the plaintiffs must give up their common law medical malpractice claim against the doctors for a new suit against the government, a suit which in all likelihood will be dismissed for want of jurisdiction. Since the plaintiffs have not pled a cognizable claim under the Tort Claims Act, why would the government not file a plea to the jurisdiction?

Contrary to the Court's concern, section 101.106 does not foster conflict between the government and its employee because it compels the plaintiff to choose the defendant at the beginning of the case. The plaintiff may sue the government, the government's employee, or both with different consequences attaching to the various elections. When the plaintiff chooses to sue only the employee, subpart (b) bars the plaintiff from suing the governmental unit "regarding the same subject matter unless the governmental unit consents." TEX. CIV. PRAC. & REM.CODE § 101.106(b). Although ostensibly barred under (b), subpart (f) reopens the issue of the government's consent, providing a new opportunity for the plaintiff to sue the government. *Id.* § 101.106(f). Subpart (f) therefore gives the plaintiff a second chance to sue the government, but it only gives the plaintiff thirty days to make that decision.[12] *Id.*

The plaintiffs here have elected to stand on their suit against the doctors and thus are now barred from suing the govern-

---

**12.** Under § 101.106(b), a plaintiff who sues an employee cannot thereafter sue the governmental employer without its consent. The government consents to its substitution as de-

fendant under § 101.106(f) but that consent terminates 30 days after the filing of the employee's motion to dismiss.

ment. *Id.* § 101.106(b). If the doctors can prove that the Tort Claims Act would have waived the government's immunity but for the plaintiffs election to sue them individually (that suit "could have been brought ... against the governmental unit"), the doctors will establish their right to be dismissed, but not their employer's liability. *Id.* § 101.106(f). The Court's imagined conflict of interest does not exist because subpart (b) "bars any suit or recovery by the plaintiff against the governmental unit[.]" *Id.* § 101.106(b). Under these circumstances, section 101.106(f) merely provides the employees with an immunity from liability under its "official capacity" defense.

The Court and I agree that the employee may establish a defense or immunity under section 101.106's terms, but we disagree on what those terms entail. In the Court's view, all that is required for the employee's dismissal under subpart (f) is proof of the doctors' employment status and conduct within the scope of that employment. One of the doctors has supplied this proof so I am somewhat puzzled by the Court's decision to remand the claim against him for further proceedings. The statute gives the plaintiff only thirty days to dismiss the employee and substitute the government. Since the time for suing the government has passed, and the plaintiff cannot, according to the Court, sue the employee, what remains to be done? All that occurs to me is that a remand affords the plaintiffs an opportunity to raise any constitutional questions regarding the application of this statute before dismissal. I agree they should have that opportunity, but they would not need it, if the Court merely applied section 101.106 according to its terms.

\* \* \* \* \* \*

I recognize that it is our responsibility to accept the Legislature's intent even when that intent is to overrule one of our previous opinions. *Leos v. State Emp. Workers' Comp. Div.*, 734 S.W.2d 341, 343 (Tex.1987). But we should not loosely ascribe such intent to legislation simply to avoid questions of *stare decisis*. If a majority of the Court now feels that the distinction drawn in *Kassen* between government and medical discretion was in error, we should address the matter directly rather than engage in a distortion of legislative intent.

When we construe a statute, our primary goal is to ascertain and give effect to the Legislature's intent. *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex.2009). When we can, we rely on the primary source of that intent, the language of the statute. *Phillips v. Bramlett*, 288 S.W.3d 876, 880 (Tex.2009). The statutory text, title and design of section 101.106 plainly put the plaintiff to an election of remedies. Because the Court's interpretation takes that election away, requiring the plaintiff to sue only the government, I respectfully dissent. I would affirm the court of appeals' judgment.

