ACCEPTED
01-13-01034-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/18/2015 4:46:55 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-13-01034-CV

**In the Court of Appeals
for the First Judicial District
Houston, Texas**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/18/2015 4:46:55 PM
CHRISTOPHER A. PRINE
Clerk

**SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT**

**Appellants,**

VS.

**LEAH ANN GONSKI MARINO F/K/A LEAH ANNE GONSKI AND JAOU-CHEN HUANG, M.D.**

**Appellees.**

On Appeal From the 164th Judicial District Court of Harris County, Texas
Trial Court Cause No. 2012-35806A
The Honorable Alexandra Smoots-Hogan, Judge Presiding

## APPLELLANTS' RESPONSE TO APPELLEE GONSKI'S MOTION FOR REHEARING AND/ORMOTION FOR EN BANC RECONSIDERATION

TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:

In its opinion of November 14, 2014, this Court correctly overruled the trial court's order granting Dr. Gonski's motion to dismiss because it determined that Gonski failed to prove she was an "employee" of the Foundation since it did not have the legal right to control the details of her work at the time of the incident, as required by the TTCA.

1

## RESPONSE TO POINT ONE

Dr. Gonski argues, in her motion for rehearing, that the Court erred in its analysis because it relied upon the holding in *St. Joseph Hosp. v. Wolff*, 94 S.W. 3d 513, 542 (Tex. 2002), instead of *Murk v. Scheele*, 120 S.W. 3d 865, 866-67 (Tex. 2003). According to Dr. Gonski, *Wolff* is not applicable because it did not interpret the statutory definition of "employee" contained in §101.001 (2) of the Texas Tort Claims Act (TTCA).

The TTCA defines an "employee", for purposes of the TTCA in TEX. CIV. PRAC. & REM. CODE §101.001(2):

> "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Thus, one of the main focuses of the statute is whether the governmental unit has a legal right to control the task which purports to establish its vicarious liability.

The discussion of right to control in the context of a medical resident's malpractice liability was central to the holding in *Wolff*. Indeed, the Court stated, "We have even gone so far as to say that 'the right to control remains the 'supreme test' for whether the master-servant relationship exists' and thus whether the rule of vicarious liability applies." *St. Joseph Hosp. v. Wolff*, 94 S.W. 3d at 542.

In fact, the *Murk* opinion cited *Wolff* with approval for its discussion regarding right to control. *See, Murk v. Scheele*, 120 S.W.3d 865, 867, n. 11. Thus, Gonski's argument that *Wolff* is not applicable because it did not specifically discuss the TTCA definition of "employee" is without merit, since the issue for which it was relied upon by the Court was its discussion of right to control which is included in the TTCA definition of "employee."

Next, Dr. Gonski claims that *Murk* supports her argument that the Foundation only has to partially control the details of her work. But, Dr. Gonski has provided no evidence that any of the details of the medical care she provided to Shana Lenoir were controlled by the Foundation. In fact, the Foundation's bylaws conclusively negate any right to control by the Foundation of medical care provided by Dr. Gonski to Shana Lenoir at the UT Physicians' clinic, as found by the Court.

Finally, Dr. Gonski cites *Kamel v. Sotelo*, No. 2009 WL 793742 (Tex. App.—Houston [1st Dist.] 2009, no pet.), in support of her argument that she was the Foundation's employee. However, a critical difference between this case and *Kamel* is that the resident in *Kamel* testified that she was employed by UTHSCH, instead of the Foundation. Further, the *Kamel* court did not consider the Foundation's articles of incorporation and franchise tax certificate because these documents were not made a part of the appellate record. *Id*. at footnote 4. Here, Dr. Gonski asserted she was employed by the Foundation and the Foundation's articles of incorporation,

3

bylaws and franchise tax certificate are in the appellate record. This Court properly relied upon the Foundation's bylaws to determine it did not have the right to control the details of Dr. Gonski's work at the time of the incident.

## **RESPONSE TO POINT TWO**

In Point Two, Dr. Gonski claims that the Court also erred in its ruling because she conclusively established that the Foundation had a legal right to control her work. However, this Court determined that, "By the terms of its bylaws, the Foundation has disavowed any right to control the work of the residents it appoints to the Health Science Center residency program and any liability for medical malpractice that might result from that work." *Opinion* at 18. The Court also found that a similar disavowal of a resident's work occurred in *Wolffe*, which the Texas Supreme Court held was sufficient to negate the existence of the right to control, as a matter of law. *Id*. at 19.

For the first time on appeal, Dr. Gonski argues in her motion for rehearing that UTHSCH exercised control over her through instruction from the Foundation. However, Dr. Gonski never made this argument in the trial court and cannot raise it for the first time on appeal in a motion for rehearing. *City of Houston v. Clear Creek Basin Auth*., 589 S.W.2d 671, 678-79 (Tex. 1971); TEX. R. APP. P. 33 (a)(1)(A). However, in the event the Court considers this new argument, the Lenoirs respond that there is no evidence that the Foundation ever told or instructed UTHSCH to do

4

anything regarding Dr. Gonski. Like St. Joseph in *Wolff*, UTHSCH had certain responsibilities as the sponsoring institution for Dr. Gonki's educational program under ACGME guidelines. *See, St. Joseph Hosp. v. Wolff*, 94 S.W. 3d at 543.

Dr. Gonski argues there is no evidence of a contract whereby the Foundation relinquished the right to control Gonski to a third party or that a third party agreed to accept liability for Dr. Gonski. This is precisely the reason that the Lenoirs sued Dr. Gonski in her individual capacity in the first place and the trial court erred in granting her §101.106 (f) motion to dismiss—no other entity was legally responsible for her medical malpractice at the time she rendered medical care to Shana Lenoir, so Dr. Gonski is liable for her own negligent conduct. *See, Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex., 2008) (the purpose of §101.106 is "to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable…").

Dr. Gonski argues that the Foundation's internal bylaws are not binding on or enforceable against any third party and cannot be legally relied upon by the Foundation to "disavow" legal responsibility for its residents. While it is unclear what third party Dr. Gonski is referring to, the Notice of Appointment she signed says residents are subject to and agree to abide by the Foundation's policies, which necessarily includes its bylaws. CR 264. As such, Dr. Gonski agreed that *she* was subject to would abide by the Foundation's bylaws. The Foundation's bylaws

5

prevent Dr. Gonski from arguing that the Foundation had a legal right to control the details of her work since she was practicing medicine at a facility that the Foundation did not own or operate.

Dr. Gonski cites no legal authority for her argument that the Foundation cannot "disavow" legal responsibility for residents, particularly when the resident is not complying with the Foundation's policies. Dr. Gonski assumed the risk of any potential malpractice liability by practicing medicine at a facility that the Foundation did not own or operate, under the plain terms of the Foundation's bylaws.

Next, Dr. Gonski argues that the Foundation's bylaws have never been followed and must be considered abandoned. However, there is no evidence that the Foundation's bylaws have never been followed, so that they should be considered abandoned and Dr. Gonski cites no evidence in support of her argument. Instead, Dr. Gonski makes the blanket statement, "[T]o the extent that Paragraph 5 of the bylaws prohibits the practice of medicine by Foundation employees except at facilities owned or operated by the Foundation, these internal bylaws have never been followed and can never be followed because the Foundation does not and has not…ever owned or operated any 'facilities.'" *See, Mtn for Rehearing* at 8.

In effect, Dr. Gonski is arguing that Paragraph VI.5 does not apply because it is impossible, since the Foundation does not own or operate any medical facilities.

Dr. Gonski misinterprets Paragraph VI.5. According to ¶VI.5 of the Foundation's by-laws (CR 313):

> 5. **Physicians employed by the corporation shall have no authority to engage in the practice of medicine for or on behalf of the corporation except at a clinic, hospital, or other facility owned or operated by the corporation**. Upon written authorization of the President, physicians employed by this corporation may act in a consulting capacity at other clinics, hospitals, or facilities.

Paragraph VI.5 does not prohibit the practice of medicine by Foundation employees at facilities that the Foundation does not own or operate, instead it prohibits the practice of medicine <u>for or on behalf of the Foundation</u> except at facilities the Foundation owns operates. Thus, Dr. Gonski could practice medicine at the UT Physicians clinic where she treated Shana Lenoir, she just could not do so <u>for or on behalf of the Foundation</u> because the Foundation did not own or operate the clinic. Dr. Gonski is liable for her own negligent conduct that occurred at the UT Physicians clinic according to the Foundation's bylaws and the Court properly determined she was not acting as the Foundation's "employee" at the time of the incident.

Similarly, Dr. Gonski argues that the Foundation's bylaws should be disregarded because of an alleged conflict with the Foundation's articles of incorporation. However, Dr. Gonski offers no evidence of an actual conflict between the Foundation's articles of incorporation and its bylaws. Instead, Dr. Gonski relies upon her incorrect interpretation of the bylaws to fabricate an alleged

7

conflict. Dr. Gonski argues that the Foundation's articles of incorporation allow residents to practice at any hospitals owned or operated by the UT System or that has an affiliation agreement with a medical component of the UT System. "This provision expressly contemplates that Foundation employees will work at facilities that are not owned by the Foundation." *See, Mtn for Rehearing* at 9. However, Dr. Gonski does not identify a conflict between this provision and any bylaw, in fact, the bylaws address the scenario where a resident is working at a facility not owned or operated by the Foundation.

According to ¶VI.4 of the Foundation's by-laws (CR 313):

4. **All physicians employed by the corporation for the purpose of serving as a member of the staff of any hospital or hospitals that are neither owned nor operated by the corporation shall, in the performance of their duties as members of the staff of such hospital or hospitals, be subject to the direction and control of the hospital or hospitals upon whose staff he serves. No physician employed by the corporation shall serve upon the staff of a hospital not owned or operated by the corporation unless and until the governing body of such hospital shall agree in writing to assume full responsibility for the direction and control of the acts of such physician while serving upon the staff of the hospital and shall further agree in writing to hold the corporation harmless from all liability whole engaged in the scope and course of his duties as a member of the staff of such hospital. No director, officer, or employee of the corporation shall be authorized to act on behalf of the corporation to direct or control the acts of any physician employed by the corporation while said physician is serving as a member of the staff of any hospital or hospitals not owned or operated by the corporation.**

Thus, before a Foundation resident can practice medicine at a hospital not owned or operated by the Foundation, several conditions must be met: (1) the resident will be subject to the direction and control of the hospital, (2) the governing body of the hospital has to agree in writing to direct and control the resident and indemnify the Foundation, and (3) the Foundation cannot direct or control the acts of the resident while serving at the hospital. The Court also summarized this bylaw provision in its opinion. *See, Opinion* at 18.

In this case, the Foundation assigned Dr. Gonski to the residency program at MHH—Memorial Hermann Hospital—a hospital it did not own or operate. CR 264. Thus, MHH had to comply with Paragraph VI.4 of the Foundation's bylaws. The Foundation's handbook identifies MHH as a hospital affiliated with the residency program. CR 714. Further, the Foundation's handbook indicates that residents practicing at MHH are covered by MHH's liability insurance. CR 722.

Although Dr. Gonski admits there are contractual agreements between the Foundation, UTHSCH and MHH regarding the placement of residents, these contracts have not been produced and Dr. Gonski claims they are not relevant. *See, Mtn for Rehearing* at 14. The Court should disregard Dr. Gonski's argument that the Foundation's bylaws have been abandoned when she has failed to produce the documents which would show that the bylaws have not been abandoned and are actively being complied with by the Foundation.

Finally, Dr. Gonski claims that the care at issue occurred in an "internal clinic" and tries to draw a distinction between such a clinic and a hospital to argue that Paragraph VI.4 of the bylaws does not apply. Dr. Gonski's sole support for the "internal clinic" vs. hospital distinction is the Affidavit of Pamela Promecene, M.D. at ¶¶4-7 where she briefly discusses ACGME guidelines. CR 741.

Although there are ACGME guidelines attached to her affidavit, there is no discussion of "internal clinics" like UT Physicians contained in these materials, nor does her affidavit contain a specific reference to the ACGME guidelines where this information can be found. CR 745-775. Therefore, the Court and the Lenoirs have no choice but to take Dr. Promecene's word that the information is correct. The Lenoirs timely objected that Dr. Promecene's affidavit was conclusory. CR 897. As the Court stated in its opinion, "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 826 (Tex. App.—San Antonio 2012, no pet.) (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although the Court's opinion overruled the Lenoir's objections regarding affidavits submitted by Appellee Dr. Huang, it did not address the Lenoirs' conclusory objection regarding Dr. Promecene's affidavit submitted by Dr. Gonski.

Contrary to Dr. Gonski's construction argument, the Court's construction of the Foundation's bylaws is also best calculated to promote the corporation's welfare

because it is clear that the overall intent of the bylaws is to avoid liability by the Foundation for a resident's medical malpractice and the Court should reject Dr. Gonski's attempt to parse and piecemeal the language in the bylaws.

The Texas Supreme Court has repeatedly held that residents alleged to be governmental employees have failed to meet their burden of proof. *See*, *Franka v. Velasquez*, 332 S.W.3d 367, 373-75 (Tex. 2011); *Murk v. Scheele*, 120 S.W. 3d 865, 866-67 (Tex. 2003). This Court properly determined that Dr. Gonski failed to prove she was the Foundation's "employee" at the time of the incident and the trial court erred in granting her §101.106 (f) motion to dismiss.

## PRAYER

For the reasons set forth above, Appellants respectfully request that this Court deny Appellee Leah Anne Gonski's request for a rehearing, and remand this case to the trial court for further proceedings and grant Appellants all other relief to which they may be entitled.

Respectfully submitted,
**THE GOURRIER LAW FIRM, PLLC**

By: /s/ Joseph M. Gourrier
JOSEPH M. GOURRIER
Texas State Bar No. 24007258
530 Lovett Boulevard, Suite B
Houston, Texas 77006
joseph@gourrierlaw.com
Telephone: 713-533-9077
Facsimile: 713-533-9376
**ATTORNEY FOR APPELLANTS**

11

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), Appellants certify that this brief is 2,567 words which is in compliance with Texas Rule of Appellate Procedure 9.4(i)(2).

By:   /s/ Joseph M. Gourrier
JOSEPH M. GOURRIER
Texas State Bar No. 24007258

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Texas Rules of Civil Procedure via U.S. Mail, certified, return receipt requested, e-service, and/or facsimile and/or hand delivery, on this 18th day of March 2015.

| | |
|---|---|
| Charles B. Holm<br>Kyle M. Smith<br>Holm Bambace, LLP<br>1010 Lamar, Suite 1100<br>Houston, Texas 77002<br>Telephone: (713) 652-9700<br>Facsimile: (713) 652-9702<br>***Attorneys for Defendants Leah Ann Gonski Marino f/k/a Leah Anne Gonski and Jaou-Chen Huang, M.D.*** | John R. Strawn, Jr.<br>Victoria P. Skinner<br>Pennzoil Place, South Tower<br>711 Louisiana, Suite 1850<br>Houston, Texas 77002<br>Telephone: (713) 659-9600<br>Facsimile: (713) 659-9601<br>***Attorneys for Defendant Leah Ann Gonski Marino f/k/a Leah Anne Gonski*** |

/s/ Joseph M. Gourrier
Joseph M. Gourrier