**REVERSE, RENDER and DISMISS; and Opinion Filed February 17, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00796-CV

**STEPHEN X. SKAPEK, M.D., DANIEL BOWERS, M.D.,
PAUL DAVID HARKER-MURRAY, M.D., JEFFREY SCOTT KAHN, M.D.,
LAURA KLESSE, M.D., PATRICK LEAVEY, M.D., TAMRA SLONE, M.D.,
MARTHA STEGNER, M.D., TANYA WATT, M.D. AND NAOMI WINICK, M.D.,
Appellants
V.
CRAIG PERKINS AND KIMBERLY PERKINS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF CODY PERKINS, DECEDENT, Appellees**

**On Appeal from the 68th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-14-00917**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Myers, and Richter[1]
Opinion by Justice Lang-Miers

In this accelerated interlocutory appeal, appellant Doctors appeal the trial court's denial

of their respective motions for summary judgment in which they sought dismissal of medical

negligence claims pursuant to section 101.106(f) of the Texas Tort Claims Act. We reverse the

trial court's order and render judgment dismissing appellees' claims against the Doctors.

BACKGROUND

Craig and Kimberly Perkins, individually and as representatives of their deceased 16-

year-old son Cody, sued the Doctors and Children's Medical Center of Dallas. As alleged in the

---

[1] The Hon. Martin Richter, Justice, Assigned

Perkins' third amended petition, on January 25, 2012, Cody had surgery at Children's to remove a brain tumor associated with the disease primary CNS lymphoma. The surgery was successful, and Cody began chemotherapy as part of his follow-up care and treatment. The Perkins alleged that the standard treatment protocol for Cody's illness was not followed, however, and instead, he was given an experimental protocol designed to treat patients with severe systemic disease, which they claimed Cody did not have. They alleged that the treatment aggressively impaired bone marrow growth and severely compromised Cody's immune system. In March 2012, Cody was admitted to Children's with complications associated with this therapy. After a CT scan, Cody was given a medication for infiltrates in his lungs. But the Perkins alleged that the medication was discontinued after six days instead of the usual twenty-one days, and Cody was discharged without a follow-up CT scan. They alleged that the Doctors continued Cody on the improper chemotherapy protocol, and Cody's condition deteriorated. In May 2012, Cody died from complications related to the treatment.

The Perkins asserted that appellant Dr. Stephen X. Skapek deviated from the standard of care by failing to use the standard treatment protocols for Cody's tumor and instead recommending and performing an experimental treatment when Cody was not an appropriate candidate for that protocol. They asserted that appellants Drs. Daniel Bowers, Paul David Harker-Murray, Laura Klesse, Patrick Leavey, Tamra Slone, Tanya Watt, Naomi Winick, and Martha Stegner failed to recognize that Skapek had placed Cody on an improper protocol and remove him from the protocol. They alleged that appellant Dr. Jeffrey Scott Kahn, an infectious disease specialist, failed to keep Cody on the medication for his lungs for the proper amount of time and failed to scan Cody's chest prior to discharging him.

The Perkins asserted that all the Doctors, except Kahn, acted in their capacities as agents and independent members of the Children's Medical Center staff "acting within the course and scope of [their] staff privileges." They alleged that the Doctors and Children's were negligent

and that the negligence proximately caused Cody's injuries and death and proximately caused their own injuries. They sought survival and wrongful death damages.

The Doctors answered the lawsuit and moved to dismiss the claims against them under section 101.106(f) of the Tort Claims Act, which states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2011). The Doctors asserted that they were entitled to dismissal because they were employees of a governmental unit—The University of Texas Southwestern Medical Center at Dallas—during their treatment of Cody at Children's; the alleged conduct fell within the scope of their employment with a governmental unit; and the lawsuit could have been brought against the governmental unit. The Doctors moved that UT Southwestern be named in the lawsuit in their place within thirty days.

The trial court did not rule on the Doctors' motions, and after more than thirty days, they each moved for summary judgment on the same ground. The Doctors provided summary judgment evidence to support their arguments. The Perkins responded to the Doctors' motions maintaining that they raised a genuine issue of material fact about whether the Doctors were employees of a governmental unit. After a hearing, the trial court denied the Doctors' motions and this interlocutory appeal followed.

In their sole issue on appeal, the Doctors contend that the trial court erred by denying their motions for summary judgment. They argue that they conclusively established they were entitled to dismissal of the suit under section 101.106(f) because they are employees of a governmental unit and the Perkins could have sued the governmental unit.

STANDARD OF REVIEW

We review a trial court's decision to deny a motion for summary judgment de novo. *Powell v. Knipp*, 479 S.W.3d 394, 398 (Tex. App.—Dallas 2015, pet. denied). By moving for summary judgment under section 101.106(f), the Doctors were asserting a claim of governmental immunity. *See id.* (citing *Franka v. Velasquez*, 332 S.W.3d 367, 371 n.9 (Tex. 2011)). A defendant moving for summary judgment on the affirmative defense of governmental immunity under section 101.106(f) must conclusively establish that (1) he was an employee of a governmental unit; (2) the claims, if brought against the governmental employer, would fall within the ambit of the Tort Claims Act; (3) the claims are based on conduct that was in the general scope of his employment; and (4) he moved to substitute the governmental employer and to be dismissed from the lawsuit. *Id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). If the movant satisfies its burden, the burden shifts to the nonmovant to raise a disputed fact issue or an exception to the affirmative defense. *Powell*, 479 S.W.3d at 398.

DISCUSSION

The Doctors contend they conclusively established they were entitled to dismissal under section 101.106(f). Of the four elements the Doctors had to prove, the Perkins challenged only the first element, that is, whether the Doctors established as a matter of law that they were "employees" of UT Southwestern for purposes of section 101.106(f) and the Tort Claims Act. Consequently, we limit our discussion to the disputed element.

The Tort Claims Act defines "employee" as:

a person who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2). This definition requires proof of "paid service" and "legal right to control." *Id.* The Doctors' proof regarding "paid service" is

–4–

undisputed. Consequently, the only issue on appeal is whether the Doctors conclusively established that UT Southwestern had the legal right to control their tasks at Children's.

A party may establish legal right to control in two ways: 1) evidence of a contract that expressly assigns the right of control or, absent a contract, 2) evidence of actual control over the manner in which the work is to be performed. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). In this case, we deal with the second method.

Each Doctor provided as summary judgment evidence an affidavit that stated (1) the Doctor was a salaried, full-time physician and faculty member employed by UT Southwestern in the Pediatrics Department during the time the Doctor cared for and treated Cody at Children's; (2) UT Southwestern determined the hospitals where the Doctor was allowed to seek staff privileges; (3) the Doctor treated patients at Children's at the direction of and on behalf of UT Southwestern; (4) the Doctor did not receive any compensation from Children's for Cody's treatment; (5) the Doctor's job duties as a faculty member at UT Southwestern included providing medical care and treatment to patients like Cody at Children's; (6) all care and treatment the Doctor provided to Cody at Children's was on behalf of UT Southwestern; (7) whenever the Doctor provided medical care and treatment to a patient at any facility it was only as a paid employee of UT Southwestern; (8) the Doctor was not allowed to retain any professional fees the Doctor received outside of UT Southwestern but was required to give those fees to the institution's trust fund; (9) the Doctor's relationship with Children's was as a member of its independent medical staff; and (10) Children's independent medical staff included physicians who were not employed by UT Southwestern.

Each Doctor also presented as summary judgment evidence a Memorandum of Appointment with UT Southwestern for the time in which they treated Cody which stated that the appointment was subject to "the Rules and Regulations of the Board of Regents of The University of Texas System, Regental and UT System policies and the policies and procedures of

UT Southwestern"; a W-2 Wage and Tax Statement showing the Doctor received wages from UT Southwestern during the relevant time period; and an affidavit from UT Southwestern's human resources department corroborating the Doctor's employment there. In addition, the Doctors presented a consent form from Cody's medical records in which Children's advised the Perkins that the physicians who treated Cody were not employees or agents of Children's:

NOTICE TO ALL PATIENTS

*The physicians who treat you/your child at Children's Medical Center (Children's) are not employees or agents of Children's.* They are either (i) independent physicians engaged in the private practice of medicine who have staff privileges at Children's; (ii) independent physicians who are independent contractors and have staff privileges at Children's; (iii) physicians employed by the University of Texas Southwestern Medical Center or another institution who have staff privileges at Children's; or (iv) physicians participating in the care of patients as part of a post-graduate medical education program. As a result, you will be separately billed by the physicians for their services.

(Emphasis added).

The Doctors cite several cases to support their arguments that their evidence conclusively established UT Southwestern controlled their tasks while at Children's.

First, the Doctors argue that the *Powell* case controls our evaluation and resolution of this appeal. *See* 479 S.W.3d 394 *passim*. In that case, we said that the doctor's Memorandum of Appointment showing he "was 'subject to the provisions of the Rules and Regulations of the Board of Regents of the University of Texas System, Regental and UT System policies, and the policies and procedures' of [UT Southwestern]" was sufficient to prove he was acting in the scope of his employment for UT Southwestern when he provided medical services to the patient in that case. *Id*. at 400. We also considered evidence that we do not have here, specifically, a contract between Children's and UT Southwestern which addressed some elements of control of the doctor's tasks. *See id*. at 402–04.

The Doctors also cite *Murk v. Scheele*, another "legal right to control" case. 120 S.W.3d 865 (Tex. 2003). In that case, the evidence showed that the doctor practiced only for UT Health

–6–

Science Center as a member of UT's faculty; all compensation came from UT; and the doctor's medical decisions were subject to regimens prescribed by UT. *Id.* at 867. The supreme court found this evidence sufficient to show that the doctor was an employee of UT. *Id.*

Finally, the Doctors rely on *Poland v. Willerson*, No. 01-07-00198-CV, 2008 WL 660334 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op.), to support their arguments. The evidence to support "employee" status in that case was the doctor's affidavit stating he was a salaried employee of a governmental unit at all times relevant to the issues in the lawsuit. *Id.* The court also found sufficient the doctor's affidavit stating that at the time he treated the complainant, he was acting within the scope of his employment with the governmental unit. *Id.* at *7.

In addition to these cases, we recently considered similar issues in *Lee v. Hunter*, No. 05-16-00325-CV, 2016 WL 7448338 (Tex. App.—Dallas Oct. 27, 2016, no pet.) (mem. op.). The doctor in that case filed evidence similar to the evidence filed by the Doctors here: an affidavit about the doctor's employment relationship with UT Southwestern, a Memorandum of Appointment, and a W-2 form. *Id.* at *1. We concluded the evidence was sufficient to satisfy the doctor's burden under section 101.106(f). *Id.* at *2–3.

We conclude that the Doctors satisfied their summary judgment burden.

In response to the Doctors' arguments, the Perkins contend they raised a genuine issue of material fact about the Doctors' status as employees of UT Southwestern. They cite to several provisions of Bylaws and Rules and Regulations that they contend show Children's, not UT Southwestern, controlled the details of the Doctors' tasks at Children's, even down to the color of the ink the Doctors were required to use to write medical reports. But those Bylaws and Rules and Regulations dealt primarily with matters required to be in a patient's record; none addressed the manner in which the Doctors were to provide the specific medical care and treatment about which the Perkins complain. For example, the Perkins do not cite to any provision in the Bylaws

or Rules and Regulations relating to how the Doctors were to determine the proper protocol for Cody's follow-up care and treatment, how long a medication regimen should be, or when and how to scan a patient before discharge.

Additionally, the Bylaws and Rules and Regulations the Perkins refer to are not those of Children's, but those of the independently organized Children's Medical Staff, a distinction noted in much of the Perkins' summary judgment evidence.

The Perkins rely most heavily on an August 2, 2013 letter from Regina Montoya, the then Senior Vice President of External Relations and General Counsel at Children's, to the state attorney general in which she made the following statement:

> UT Southwestern physicians who practice at Children's do so as members of the independently organized Children's Medical Staff ("Medical Staff"). When physicians participate in any activities on behalf of Children's, they do so only on behalf of and as representatives of Children's Medical Staff, not as representatives of UT Southwestern.

The Perkins argue that this statement shows that when the Doctors were providing medical care to Cody at Children's, they did so on behalf of Children's, not UT Southwestern. We disagree.

The letter again notes the distinction between Children's and Children's independently organized medical staff. The letter did not state the physicians represented Children's; it stated they represented Children's Medical Staff.

Regardless, Montoya testified that she was contacted by UT Southwestern about an open records request UT Southwestern had received. In preparing to respond to the request, UT Southwestern discovered that one of its faculty members was in possession of a contract between Children's and a guest speaker at Children's and advised Montoya that it may have to produce the contract in response to the open records request. Montoya testified that the purpose of the letter was to explain to the attorney general that Children's, as a not-for-profit private institution, was not subject to an open records request, and to assist the attorney general in understanding

–8–

why UT Southwestern should be advised not to disclose the contract that was owned by Children's. She testified that the letter did not "deal with any clinical activity of any member of the medical staff of Children's Medical Center[.]"

Anne Roberts, the corporate representative of Children's, also made the distinction between Children's and Children's Medical Staff when she was asked about provisions in the Bylaws and Rules and Regulations. She explained that only "[t]he medical staff oversees the clinical practice of medicine."

The Perkins also contend that the cases upon which the Doctors rely are distinguishable, and that this case is more like *Lenoir v. Marino* than any of the cases cited by the Doctors. 469 S.W.3d 669 (Tex. App.—Houston [1st Dist.] 2015, pet. granted). Again, we disagree.

In that case, a woman and her unborn twins died after receiving a progesterone injection from a two-year medical resident at UT Physicians clinic when her attending physician was not available. *Id*. at 672. Her family sued both the resident and the attending physician, and both doctors moved to dismiss the claims pursuant to section 101.106(f) contending they were employees of a governmental unit. *Id*. at 672. The resident argued she was an employee of UT System Medical Foundation, and the attending physician argued he was an employee of UT Health Science Center at Houston and was overseeing the work of residents at the UTP clinic as part of his employment. *Id*. at 672–73. The trial court granted the doctors' motions and dismissed the claims against them. *Id*. at 672. On appeal, the court affirmed the dismissal as to the attending physician but reversed the dismissal of the claims against the resident. *Id*. In doing so, the court examined the definition of "employee" as to both the resident and the attending physician. *See id*. at 675–86. The Perkins focus their arguments on the court's analysis of the claims against the resident. But we think this case is more analogous to the court's analysis of the claims against the attending physician. For example, the attending physician had worked at the Health Science Center for 20 years as an associate professor. *Id*. at 682. His job involved

educating and training medical students and residents and providing inpatient and outpatient medical care to patients at assigned hospitals, including the UTP clinic. *Id*. He was paid by the Health Science Center, was required to put all professional fees outside of those received from the Health Science Center into the Center's trust fund for the benefit of the Center, and testified by affidavit similarly to the Doctors in this case. *See id*. at 683–84. The court concluded that the attending physician was entitled to dismissal under section 101.106(f). *Id*. at 686.

We conclude that the Perkins' evidence did not raise a genuine issue of material fact about UT Southwestern's control of the Doctors' tasks at Children's. Accordingly, we sustain the Doctors' sole issue on appeal.

CONCLUSION

We reverse the trial court's order denying the Doctors' respective motions for summary judgment and render judgment granting the motions and dismissing the Perkins' claims against the Doctors.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

160796F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHEN X. SKAPEK, M.D.,
DANIEL BOWERS, M.D.,
PAUL DAVID HARKER-MURRAY, M.D.,
JEFFREY SCOTT KAHN, M.D.,
LAURA KLESSE, M.D.,
PATRICK LEAVEY, M.D.,
TAMRA SLONE, M.D.,
MARTHA STEGNER, M.D.,
TANYA WATT, M.D. AND
NAOMI WINICK, M.D., Appellants

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-00917.
Opinion delivered by Justice Lang-Miers.
Justices Myers and Richter participating.

No. 05-16-00796-CV        V.

CRAIG PERKINS AND KIMBERLY
PERKINS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF
CODY PERKINS, DECEDENT, Appellees

In accordance with this Court's opinion of this date, we **REVERSE** the June 20, 2016 Order Denying Defendants' Amended Motions for Summary Judgment Seeking Dismissal and **RENDER** judgment **GRANTING** the motions and **DISMISSING** appellees' claims against appellants with prejudice.

It is **ORDERED** that appellants Stephen X. Skapek, M.D., Daniel Bowers, M.D., Paul David Harker-Murray, M.D., Jeffrey Scott Kahn, M.D., Laura Klesse, M.D., Patrick Leavey, M.D., Tamra Slone, M.D., Martha Stegner, M.D., Tanya Watt, M.D. and Naomi Winick, M.D. recover their costs of this appeal from appellees Craig Perkins and Kimberly Perkins, Individually and as Representatives of the Estate of Cody Perkins, Decedent.

Judgment entered this 17th day of February, 2017.